In the Matter of Paul BARKLEY d/b/a The Fish Monger II, Debtor.

BANK OF LANSING, Plaintiff,

v.

Paul BARKLEY, d/b/a The Fish Monger, and Edward B. Spence, Trustee, Defendants.

Bankruptcy No. HL 82 0094.
Adv. No. 82 835.

United States Bankruptcy Court, W.D. Michigan.

July 27, 1983.

William Jennings, Lansing, Mich., for plaintiff.

Edward Spence, Lansing, Mich., trustee, defendant.

Stephen J. St. Amant, Lansing, Mich., for debtor-defendant.

OPINION

*PERFECTED SECURITY INTEREST IN PROCEEDS M.S.A. § 19.9306(4) [M.C.L.A. § 440.9306(4)]*

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the court on plaintiff, Bank of Lansing's complaint seeking abandonment and a lifting of the automatic stay as to the debtor's checking account. Bank of Lansing contends this account contains proceeds of the sale of their collateral, and they therefore retain a security interest pursuant to M.S.A. § 19.9306(4). [M.C.L.A. § 440.9306(4)]. The matter was tried on a stipulation of facts, and briefs were submitted.

The debtor and defendant in this case, Paul Barkley, owned and operated fish and

---

1. Subsequent to this matter being taken under advisement, the debtor voluntarily converted to Chapter 7.

aquarium retail stores in the City of Lansing. In August, 1980, Bank of Lansing loaned the debtor $12,000. A promissory note was signed, as were two security agreements. One security agreement gave the Bank an interest in the debtor's account receivables, contract rights, chattel paper, and inventory. The other agreement covered fixtures and equipment. Both security agreements covered proceeds of these forms of collateral. The bank took the necessary steps to perfect their interest, and the parties agree the bank has valid, properly perfected interests.

On January 13, 1982, the debtor filed a Chapter 7 bankruptcy petition. Edward B. Spence was appointed trustee. On that date, debtor's checking account with American Bank & Trust Company contained $7,154.23. A majority of those funds resulted from the sale of inventory, equipment and fixtures. However, two deposits totaling $337.74 were made in late December, 1981, and early January, 1982. These funds were from debtor's services in cleaning and repairing aquarium systems. Bank of Lansing maintains they are entitled to the entire account since it consists solely of proceeds of their collateral. The debtor denies the last two deposits are proceeds, and asserts the bank is only entitled to those proceeds received within ten days of the bankruptcy filing.

M.S.A. § 19.9306(4) [M.C.L.A. § 440.-9306(4)] (§ 9306(4) of the Uniform Commercial Code) specifies the effect of a bankruptcy filing on a secured party with an interest in proceeds. That section provides:

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) In identifiable noncash proceeds and in separate deposit accounts containing only proceeds;

(b) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) In all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is

(i) Subject to any right of setoff; and

(ii) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within 10 days before the institution of the insolvency proceedings less the sum of (i) the payment to the secured party on account of cash proceeds received by the debtor during such period and (ii) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection.

There is no question that a bankruptcy case is an insolvency proceeding as used in this section. M.S.A. § 19.1201(22) [M.C.L.A. § 440.1201(22)]. Proceeds are defined in M.S.A. § 19.9306(1) [M.C.L.A. § 440.-9306(1)] to include:

whatever is received upon the sale, exchange, collection or other disposition of collateral, or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are "cash proceeds". All other proceeds are "noncash proceeds".

The parties agree that for the bank to be entitled to the entire checking account, it is incumbent upon them to show that the account contains only proceeds of their collateral, and that no other money is commingled.

The parties have stipulated to the sources of the funds in the account. The bulk of the funds came from sales of inventory, equipment and fixtures from the debtor's retail aquarium and fish stores. The par-

ties agree that Bank of Lansing has a properly perfected interest in inventory, and the proceeds thereof. Further, equipment and fixtures are covered by a separate security agreement, and perfection is admitted. Therefore, the bulk of the funds in the account are proceeds of the bank's collateral.

The real issue in this case is the treatment of certain checks the debtor received for services he rendered in cleaning, repairing and improving customers' aquarium systems. It is stipulated that the debtor received checks for the services provided. Six checks totaling $163.92 were deposited on December 21, 1981, and five checks amounting to $173.82 were deposited January 4, 1982. The debtor contends this total, $337.74, is not covered by Bank of Lansing's security agreements, and therefore results in a commingled account. Bank of Lansing contends these monies are proceeds of account receivables, and thus are within the security agreement.

An account receivable is defined in the security agreement to include any right of the borrower to payment for goods sold or leased or for services rendered. This definition is in accord with that enunciated in the Uniform Commercial Code. *See,* M.S.A. § 19.9106 [M.C.L.A. § 440.9106]. In the present situation, it is unclear whether the debtor was paid immediately for the services he provided, or whether the services were charged on an open account. The debtor maintains that cash purchases are not proceeds of accounts receivables, and that therefore the monies earned for performing services are not within the ambit of the security agreement.

There is a split of authority on whether cash payments are proceeds of account receivables. A bankruptcy court in *In re Cooper,* 2 B.R. 188 (Bkrtcy.S.D.Tex.1980) faced the issue in the context of cash sales of concert tickets. The court stated:

> Thus when goods are sold or leased or services rendered, and such sale, lease or rendition of services is not for cash but on an open account, an account receivable is created. p. 192.

The court made a distinction between ticket sales made by employees of Cooper, and sales made by independent ticket outlets. The court held that cash payments made to employees would be the same as cash payments made directly to the debtor. No account receivables would generate, and therefore those sums were not subject to a security interest.

Other courts have taken a different approach. *In Klinger v. Pocono International Raceway, Inc.,* 289 Pa.Super. 484, 433 A.2d 1357, 31 UCC Rep. 1223 (1981), the Pennsylvania Superior Court found that cash sales did produce an account receivable. The issue before the court was whether a security interest could exist in proceeds of ticket sales. In reaching its decision that it could, the court states that after a ticket is purchased:

> The raceway simultaneously acquires an account receivable which is immediately converted into proceeds. The path from inventory to intangible to account receivable to proceeds is a continuous and uninterrupted metamorphosis, through which the security interest remains intact and perfected. § 9–303(2). 433 A.2d 1357, p. 1230

The Rhode Island Supreme Court in *Matthews v. Artic Tire, Inc.,* 7 UCC Rep. 369, 370 (1970) apparently takes the same view since they stated an account exists whether payment is due immediately or in the future. Other courts have reached the same conclusion. *See, National Bank of Commerce of Birmingham v. Alabama Football, Inc.,* 20 UCC Rep 751 (N.D.Ala.1976) (Cash given for football tickets was within the ambit of bank's security interest); *Cissell v. First National Bank of Cincinnati,* 476 F.Supp. 474, 27 UCC Rep 1393, 1399 (S.D. Ohio 1979) (Court noted that when contract rights ripened into account receivables, the account immediately vanished because of prepayment, and the resultant funds were cash proceeds).

I believe the rationale in *Klinger v. Pocono Raceway* accurately sets forth the proper approach to the present situation. Account receivable is broadly defined in the

UCC to include any right to payment for goods sold or services rendered. The UCC makes no distinction between payments received at the time goods are sold or payments not received until thirty days after the transaction. For courts to rule otherwise and create such a distinction would lead to wholly arbitrary and inconsistent results. Courts would probably be uniform that payments made thirty days after the transaction are proceeds of an account, however consistency would be shattered when courts have to interpret payments made one day, one hour, or even one minute after the transaction. The potential variety of decisions would destroy the confidence and security necessary in commercial law.

To treat payments received by a business engaged in rendering services differently based on the time of receipt of those payments may frustrate the ability of those entities to obtain financing. Creditors might be reluctant to lend money knowing that they may or may not have a security interest. Additionally, they would be secured only in those accounts which are not paid quickly. In a situation like the present, where an account contains only proceeds, the creditor would lose his secured status because the borrower had customers who paid immediately after the services were performed. Such a result is unconscionable, and makes an attempted distinction based on time of payment irrational.

Further, arguments that cash payments should be treated differently because of their form are not persuasive.[1] Allowing a creditor to have a perfected interest in cash does not expand a secured party's interest beyond that which it would otherwise have. M.S.A. § 19.9306(3) [M.C.L.A. § 440.-9306(3)] allows a creditor to maintain a secured position in cash proceeds for a ten day period, perfection lapses unless the proceeds are identifiable cash proceeds or some steps are taken to perfect within that time. Thus, the fact that payments are by cash does not conflict with the UCC perfection provisions, nor does it increase a secured party's interest.

I agree with the rationale of *Klinger v. Pocono Raceway* that the path from various forms of collateral to cash proceeds is a "continuous and uninterrupted metamorphosis, through which the security interest remains intact." *Supra* 289 Pa.Super. at 492, 433 A.2d 1357, 31 UCC Rep. at 1230. The fact that payment is received immediately or is in the form of cash should make no difference in this transition. Accordingly, the checks received for the rendering of services are proceeds of account receivables, and are thus within the confines of the bank's security interest. Since the checking account at issue contains only proceeds, the bank is entitled to the entire amount. Therefore, an order will issue awarding the Bank of Lansing $7154.23.

---

1. The payments received here were in the form of checks. Money, checks and deposit accounts are defined as cash proceeds under the UCC. M.S.A. § 19.9306(1) [M.C.L.A. § 440.9306(1)]. Therefore, no distinction between money and checks is necessary or significant.