## In re GRASSRIDGE INDUSTRIES, INC., Debtor.

**Thomas J. CARLSON, Trustee, Plaintiff,**

v.

**W.J. MENEFEE CONSTRUCTION COMPANY and Southgate Bank and Trust Company, Defendants.**

Bankruptcy No. 86–03423–S–2.

Adv. No. 87–0322–S–2.

United States Bankruptcy Court, W.D. Missouri, S.D.

Oct. 20, 1987.

Thomas J. Carlson, Springfield, Mo., Trustee.

Norman Beal, Kansas City, Mo., for Southgate Bank.

Fred A. Brooks, Springfield, Mo., for W.J. Menefee Const.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Grassridge Industries, Inc. (debtor), a general contractor specializing in the construction of bridge approaches, overpasses and other types of finished concrete and dirt work, filed a petition under Chapter 11 on August 5, 1986. The case was converted to a Chapter 7 proceeding on March 23, 1987. For some four or five years preceding the filing of the Chapter 11, debtor had obtained financing from the Southgate Bank (Bank). Debtor would receive cash advances from the Bank and had always pledged all of its assets to secure said advances. There had been several security agreements and notes, all to the same general tenor and all duly perfected.

In early 1986 debtor was experiencing financial problems. At that time debtor owed the Bank some $900,000.00. On March 4, 1986, debtor and the Bank agreed that all future estimated payments, retainage payments or other compensation paid on nine specific contracts would be paid directly to the Bank. The Greene County contract which is the subject of this adversary action was included therein. On March 19, 1986, debtor executed a final security agreement covering existing indebtedness, future advances, and any and all other debt owed or owing to the Bank. The collateral set out in the security agreement was:

All inventory, accounts receivable, contract rights, general intangibles, instruments, promissory notes, chattel paper, documents, equipment and fixtures, now owned by Debtor and such other collateral more properly described on Exhibit B, attached hereto, and all of the foregoing hereafter acquired by Debtor, and all of the proceeds or products of the same, and all returned or repossessed goods, arising from, or in any way relating to, such property, and other proceeds of sale or other disposition of inventory and all proceeds of any insurance thereon (the same being herein, sometimes referred to collectively as the "Collateral").

There has been no issue raised as to perfection and the Trustee does not assert that the Bank was at any time not secured by every asset owned by the debtor and duly perfected as to all of the purportedly secured collateral.

At the same time that debtor filed the Chapter 11 petition, it filed a Motion For Use of Cash Collateral and an emergency hearing was held by this Court on September 29, 1986. Extensive evidence was presented and the Court overruled the Motion. Debtor (then debtor-in-possession) filed an appeal but has since abandoned same. Debtor also continued to clean up some jobs and struck a deal with the co-defendant in this case, W.J. Menefee Construction Company (Contractor) and the Bank whereby debtor would finish the Greene County job while the Contractor advanced funds for materials, labor and out of pocket expenses. Any overage on estimated payments and the like would be paid to the Bank. This apparent agreement was not blessed at that time by this Court. However, there was never a new contract executed and debtor performed the "old" contract at the "old" price and upon the "old" terms, the only difference being that Contractor advanced funds to pay for payroll and supplies.

The Greene County job has now essentially been completed and the Trustee filed this adversary action against the Bank and the Contractor for some $77,493.00 accrued through estimated progress payments and some $66,668.00 in retainage now held by the State of Missouri but soon to be released to the Contractor. The Trustee is proceeding under 11 U.S.C. § 552(a). The adversary action was heard on September 1, 1987, the parties have now submitted their briefs and the matter is ripe for decision.

The Trustee under § 552(a) seeks to obtain the aforesaid $77,493.00 as well as the lion's share of the $66,668.00 retainage. The entire contract between debtor and the Contractor called for the payment of $1,889,000.00 to debtor. On August 5, 1986, (debtor's filing date) debtor had already drawn $355,340.00 on estimated progress payments and the State of Missouri was holding $17,767.00 in retainage. Subsequently debtor completed the work generating the $77,493.00 and creating the additional $48,901.00 in retainage that constitutes the $126,394.00 bone that the Trustee and the Bank are fighting over. The Contractor asserts no claim to said funds and will pay whoever is determined to be the proper party, seeking only to charge a few thousand dollars for chemicals and labor to remove certain graffiti that has been attached to the concrete under cover of darkness and which the State of Missouri always requires to be removed before final acceptance no matter whether same be of the innovative, obscene, or romantic variety. Obviously, that can be settled between the winner herein and the Contractor without Court intervention.

Therefore, this Opinion shall deal almost exclusively with the resolution of the controversy between the Trustee and the Bank. There are two statutory considerations bearing on the decision. The first of these is 11 U.S.C. § 552(a) and (b), and the second is Kansas Statutes Annotated 84-9-306, defining proceeds. This latter consideration is due to the fact that the loan documents between the debtor and the Bank provide for application of Kansas law, a prepetition contractual provision that the Court honors under the mandates of *First Nat'l Bank of Omaha v. Marquette Nat'l Bank,* 636 F.2d 195 (8th Cir.1981), *cert. denied* 450 U.S. 1042, 101 S.Ct. 1761,

68 L.Ed.2d 240 (1981), inasmuch as the Southgate Bank is located in the State of Kansas.

Section 552(a) provides:

"Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case".

Section 552(b) provides:

"Except as provided in section 363, 506(c), 522, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise".

The cited Kansas statute defines "proceeds" to include:

"Whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds ... Money, checks, deposit accounts and the like are 'cash proceeds'. All other proceeds are 'noncash' proceeds'".

It is the Trustee's position that § 552(a) cuts off the Bank's lien on the debtor's receivables arising after the filing of the original petition. The Trustee cites not only that section but several cases enunciating the same principle. See *In re Photo Promotion Associates, Inc.*, 53 B.R. 759 (Bkrtcy.S.D.N.Y.1985), from which the Trustee quotes headnote #3. However, the facts in that case are dissimilar in that the accounts receivable were short term and derived from a retail trade in family photographs and portraits solicited in chain stores and shopping malls. Here there was one contract or one account receivable which was already created, in existence and over ⅙ completed prior to debtor's filing. Likewise in *In re Northeast Chick Services, Inc.*, 43 B.R. 326 (Bkrtcy.Mass.1984) cited by the Trustee, the facts are hardly comparable. There the collateral was chickens and eggs, both of which (hopefully) had a very short time span between prepetition existence and post petition creation.

■ However, the Court does agree with the Trustee that the burden of proof as to the issue of whether the Bank's lien reaches the post petition property lies with the Bank. It is, therefore, incumbent on the Bank to establish that its lien escapes the cutoff from § 552(a) by virtue of § 552(b). Three separate cases by three separate Circuit Courts lead this Court to the conclusion that the Bank has sustained its burden. The first of these (chronologically) is *In re Sunberg*, 729 F.2d 561 (8th Cir.1984). There the Eighth Circuit held that a properly perfected post petition security interest in "crops, growing crops, livestock, farm products, equipment inventory, fixtures, contract rights, accounts and general intangibles" coupled with the fact that Iowa law had incorporated the so-called 1972 amendments to the Uniform Commercial Code, meant that the PCA retained a perfected lien in PIK proceeds arising from contracts signed prepetition, even though delivery of the PIk proceeds would occur post petition.

The second case is *J. Catton Farms v. First National Bank of Chicago*, 779 F.2d 1242 (7th Cir.1985). The Seventh Circuit cited *Sunberg*, (Id.) with approval and once again determined that PIK proceeds were subject to a prepetition lien if properly worded to extend to proceeds.

The third case is *In re Slab Fork Coal Co.*, 784 F.2d 1188 (4th Cir.1986) where the Fourth Circuit also cited the *Sunberg* case (Id.) with approval. In the *Slab Fork* case, debtor had a contract to furnish coal for a set price to Armco Steel. Prior to bankruptcy that contract and its proceeds had

been pledged to the United Virginia Bank. Armco owed Slab Fork $900,000.00 at the date of filing and Slab Fork post petition contracted with a company called Maben to continue to supply Armco but at a price less than the original contract price thereby creating an ongoing profit to Slab Fork. The Fourth Circuit held that not only was the $900,000.00 security for the Bank's debt, but also the profit generated by the post petition delivery of coal by a third party.

Consideration of applicable nonbankruptcy law in this case brings this Court to the conclusion that the Kansas version of the Uniform Commercial Code is consistent with the Iowa version considered in *Sunberg* (Id.), since Kansas has also adopted the 1972 Amendments to the Uniform Commercial Code. Thus, it seems that not only has the Eighth Circuit clearly enunciated the principles establishing the requirements of § 552(b) but those principles have been adopted and applied by the other circuits considering the same question. The facts of this case fall clearly within the *Sunberg* (Id.) scope nor does this Court find any fact in this case that would not render that case controlling upon this Court.

Debtor had a specifically identified contract with the co-defendant. Over ⅙ of that contract had been performed prepetition. Southgate Bank had a duly perfected security interest in that contract, as well as other contracts, and in accounts receivable and proceeds. The Bank's security interest survived the filing of debtor's petition under § 552(b).

The complaint of the Trustee is, therefore, DENIED and the defendant W.J. Menefee Construction Company is directed to pay over to the Southgate Bank the remaining portion of the $77,493.00 accrual along with the $66,668.00 retainage when received from the State of Missouri. Defendant W.J. Menefee Construction Company is authorized to deduct the necessary costs of graffiti removal. Counsel for Southgate Bank may supply a Judgment Entry consistent with this Opinion.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052.