**In re GREATER ATLANTIC AND PACIFIC INVESTMENT GROUP, INC., Debtor.**

**VICTOR SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

**v.**

**William R. GRIMM, Trustee, Defendant.**

**Bankruptcy No. 87–00200–W.
Adv. No. 88–0158–W.**

United States Bankruptcy Court,
N.D. Oklahoma.

Aug. 1, 1988.

As Corrected Aug. 3, 1988.

Brian S. Gaskill, of Sneed, Lang, Adams, Hamilton & Barnett, Tulsa, Okl., for plaintiff.

J. Patrick Mensching, of Barrow, Gaddis, Griffith & Grimm, Tulsa, Okl., for defendant.

## MEMORANDUM ORDER AND DECISION

MICKEY DAN WILSON, Bankruptcy Judge.

This adversary proceeding was submitted for decision on complaint, stipulations and briefs pursuant to order filed July 14, 1988. The Court also takes judicial notice of the record in *In re Greater Atlantic and Pacific Investment Group, Inc.*, Case No. 87–00200–W. Upon consideration thereof, the Court finds, concludes and orders as follows:

## FINDINGS OF FACT

1. On or about December 28, 1984, George A. Shipman and Thigpen Land Corporation ("TLC") by its president, Roy E. Thigpen, III, executed a note to Victor Savings and Loan Association ("Victor Federal"), promising to pay $4,800,000 principal and $1,687,000 in interest.

2. Contemporaneously therewith, TLC and Victor Federal executed a "Secured Loan Agreement," reciting that TLC would "be substituted for George A. Shipman in that term loan in the amount of $4,800,000;" and "as a condition" or "in consideration" of such substitution, granting Victor Federal a mortgage and security interest as follows:

"[TLC] hereby grants to Victor Federal a continuing and continuous security interest in and to all of the following:

(a) The Property;

(b) All buildings, structures and improvements now or hereafter erected or placed in or upon the Property;

(c) All of the Company's apparatus, chattels, tools, equipment, building supplies, materials, machinery, fixtures, furnishing and appliances now installed upon the property or now attached to or now used in connection with the Property, whether or not the same have or would become a part of the Property by attachment thereto, including, but not limited to, all furniture, furnishings, furnaces, radiators, heaters, air conditioners, fans, gas and oil tanks, pumps, engines, machinery boilers, thermostats, stoves, ranges, ovens, venthoods and other cooking apparatus, dishwashers, disposals, trash compactors, carpeting and other floor coverings, draperies, mirrors, gas and electric light fixtures, screens, screen doors, awnings, blinds, window shades, bathtubs, sinks, water closets, basins, faucets, pipes and other plumbing fixtures and equipment, laundry and swimming pool equipment, sprinkling, water and irrigation systems, wires, elevators, escalators, refrigeration equipment, ice boxes and all other fix-

tures of whatever kind and nature presently contained or affixed to the buildings and improvements now located upon or affixed to the Property, less and except motor vehicles, cleaning and maintenance supplies and other personalty or fixtures owned by tenants, but including all accessions and accessories to the personalty covered hereby, all replacements thereof and all parts substituted therein or thereon, whether or not same has or would become part of the Property, all of same being considered as annexed to and forming a part of the Property;

(d) All rents, issues and profits arising and to arise during the term of this Agreement for or on account of or with respect to the Property;

(e) All judgments and awards (and all proceeds thereof and other rights with expect thereto) made or to be made with respect to all or any part of the Property under or in connection with any power of eminent domain, subject to the provisions hereinafter set forth;

(f) All rights to collect and receive any sums payable as or for damages to any of the Property for any reason or by virtue of any occurrence;

(g) All rights to collect and receive any earned or unaccrued premiums for casualty insurance policies covering the Mortgaged Property due or returnable upon any cancellation of or change in such policies; and

(h) All products and proceeds of the above [,]"

Plaintiff's Ex. A, ¶ 6.1, PP. 9–10.

3. The "Property" was a Holiday Inn located in Branson, Taney County, Missouri, then doing business as a motel.

4. On April 19, 1985, Victor Federal filed its financing statement with the Missouri Secretary of State to perfect its security interest relating to the Holiday Inn in Branson, Missouri.

5. Victor Federal's interest was transferred to Victor Savings and Loan Association ("Victor") by contract with FSLIC.

6. TLC's interest was acquired by, or TLC altered its name to, Greater Atlantic and Pacific Investment Group, Inc. ("Greater Atlantic").

7. Later, Greater Atlantic filed its petition for relief under 11 U.S.C. Chapter 11.

8. On January 30, 1987, this Court appointed William R. Grimm as Trustee of Greater Atlantic ("the Trustee").

9. On February 6, 1987, Victor and the Trustee filed their "Stipulation Authorizing Trustee To Use Cash Collateral and For Adequate Protection," which provides in pertinent part as follows:

"IT IS HEREBY STIPULATED as follows by and between [the Trustee] and [Victor], a creditor holding a valid perfected security interest in four (4) motels [including] ... Holiday Inn (Branson) ... securing an outstanding obligation to Victor:

1. The Trustee is authorized to use [Greater Atlantic's] prepetition rents receivable and all postpetition rents receivable in the operation of said Motels. This authorization permits use of the cash collateral to pay any and all direct costs of administration of the estate ...

3. As adequate protection herefor, the security interests and/or mortgages held by Victor shall extend and attach to all postpetition rents receivable created by the Trustee in the course of the operation of said Motels with the same force, effect and priority as said security interests and/or mortgages attached to and affected the Debtor's prepetition rents receivable."

10. The Trustee has maintained moneys received from the rental of rooms in said Holiday Inn in an account originally designated as a cash collateral account.

11. The amount of money owed to Victor on the above-mentioned note exceeds the amount of money in the cash collateral account.

CONCLUSIONS OF LAW

The parties agree that Victor's security interest is perfected. The question is whether Victor's perfected security inter-

est attaches to moneys collected from motel customers and deposited in the Trustee's "cash collateral" account.

Victor has a mortgage on realty and a security interest in "all rents, issues and profits arising and to arise ... for or on account of or with respect to" the realty, Plaintiff's Exhibit A Pg. 10 ¶ 6.1(d). Victor asserts that money paid by motel guests for their lodging is "rent" within the meaning of the Secured Loan Agreement provision just quoted. The Trustee asserts that such moneys are not "rents" but are the proceeds of "accounts receivable" as a matter of law, and Victor is not only unperfected but has no security interest in "accounts receivable" or their proceeds.

The parties agree that the governing law is that of the State of Missouri.

The Missouri (Uniform) Commercial Code does not apply "... to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder ...," Mo.Rev.Stat. § 400.9–104(j). As a general rule, "... guests in a hotel ... are mere licensees and not tenants, and ... they have only a personal contract and acquire no interest in the realty ... the relation is not that of landlord and tenant, for, notwithstanding the guest's occupancy, it is the house of the innkeeper," 49 AM. JUR.2D "Landlord and Tenant" § 6 Pg. 48. It follows that a hotel guest's payment to the innkeeper for lodging is in the nature of a payment under contract or on account, i.e., an "account receivable." Missouri law does not provide otherwise, *United States v. PS Hotel Corp.*, 404 F.Supp. 1188, 1192 (ED No. 1975). Both parties agree that the Missouri (Uniform) Commercial Code applies here. This puts Victor in the position of arguing that the moneys here involved are not "rents" under Mo.Rev.Stat. § 400.9–104(j), yet are "rents" for purposes of the Secured Loan Agreement, Plaintiff's Ex. A, ¶ 6.1(d).

At common law, "rents" are "something which a tenant renders out of the profits of the land which he enjoys," *Black's Law Dictionary* (5th Ed.1979). Since motel guests have no interest in motel realty, guests do not, strictly speaking, pay "rent." Victor relies on a rule that words in a contract are to be given their popular meaning; but this rule may not apply where words have a legal or technical meaning, *Wineteer v. Kite*, 397 S.W.2d 752 (Mo.1965); *Ackerman v. Globe–Democrat Pub. Co.*, 368 S.W.2d 469, cert.den. 375 U.S. 949, 84 S.Ct. 353, 11 L.Ed.2d 276 (Mo. 1963); 17 AM.JUR.2D "Contracts" § ¶ 249. Paragraph 6.1 of this contract, read as a whole, indicates an intent to grant Victor a mortgage *on the realty* and a security interest in personalty *annexed to, arising from or substituted for the realty.* If Greater Atlantic had leased its hotel facility to an operator-lessee and received rent from such tenant, Victor's security interest might well attach to such rental payments. But that is not the case here. Paragraph 6.1 of this contract gives Victor no security interest in intangibles, contract rights, or accounts receivable. In sum, Paragraph 6.1 of this contract gives Victor a security interest in "the premises," not in "the business." Payments by motel guests resemble payments under contract or on account much more nearly than lease payments or "rent." No reason appears why the contractual term "rent" should be read so broadly as to include "accounts receivable."

■ Victor argues that the "Stipulation Authorizing Trustee To Use Cash Collateral and For Adequate Protection" filed February 6, 1987, requires the Trustee to treat these moneys as cash collateral and estops the Trustee from challenging their status as cash collateral. Cash collateral agreements are often entered into, early in the administration of a Chapter 11 case, out of abundance of caution to avoid violation of 11 U.S.C. § 363(c)(2). Such cautionary measures need not involve final determination of the parties' ultimate rights. (In this instance, the Trustee alleges that he had not even seen Victor's security documents when he entered into the cash collateral stipulation.) In any event, the "Stipulation" herein expressly provides that Victor shall have no greater interest in Greater Atlantic's "rents receivable" than it had under existing "security interests and/or mortgages," Stipulation Pg. 2 ¶ 3.

**360**

Unfortunately for Victor, as it turns out, existing "security interests and/or mortgages" do not reach Greater Atlantic's "rents receivable."

Therefore, Victor has no security interest in moneys in the Trustee's cash collateral account. Judgment for the Trustee shall be entered accordingly. The Trustee shall prepare and submit a form of judgment.

AND IT IS SO ORDERED.