In re INVESTMENT HOTEL PROPERTIES, LTD., A Colorado Limited Partnership, Debtor.

INVESTMENT HOTEL PROPERTIES, LTD., Plaintiff,

v.

NEW WEST FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

Bankruptcy No. 89 B 04488 C.
Adv. No. 89 C 0673.

United States Bankruptcy Court, D. Colorado.

Jan. 22, 1990.

‌⚷☞84

Lee M. Kutner, Rubner & Kutner, P.C., Denver, Colo., for debtor-plaintiff.

Steven E. Abelman, McKenna, Conner & Cuneo, Denver, Colo., for creditor-defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court upon the motion of Investment Hotel Properties, Ltd. (debtor) for summary judgment on its Complaint to determine the nature, extent, validity and priority of the liens of New West Federal Savings and Loan Association (New West). Both the debtor and New West filed briefs in support of their respective positions. This Court has jurisdiction over this proceeding and case pursuant to 28 U.S.C. §§ 1334 and 157.

There are essentially two issues to be resolved. The first issue is the nature of New West's security interest in the hotel room revenues generated by the St. Louis Clarion Hotel. If the Court finds that the security interest in the hotel room revenues is governed by the U.C.C., then, it must decide if that interest is limited by the interaction of 11 U.S.C. § 552 and Mo.Ann. Stat. § 400.9–306(4).

The essential facts are as follows. The debtor owns the St. Louis Clarion Hotel located in St. Louis, Missouri. The debtor acquired the hotel in 1984 subject to certain liens and encumbrances.

The major encumbrance upon the Hotel is the result of a loan from New West's predecessor, Sunkist Service Company. New West is the holder of a Promissory Note (Note) dated September 28, 1983, the outstanding balance of which, as of the date of the petition, exceeded $31 million. The Note is secured pursuant to a Deed of Trust and Security Agreement and an Assignment of Leases and Rents, as well as other loan documents. The Assignment of Leases and Rents at p. 3 provides New West with a right upon default to "sue for or otherwise collect and receive all issues, profits and revenues of or from the Premises, . . ." The Deed of Trust p. 5, grants to New West "[a]ll rents, revenues, income and issues derived by Grantor from the Mortgaged Property."

On July 1, 1988, the loan with New West was restructured, and the parties entered into a First Modification of Deed of Trust and Security Agreement, Assignment of Leases and Rents, Assignment of Contracts and Security Agreement. Those Agreements were amended by a Second Modification of Deed of Trust and Security Agreement which expanded New West's security interest to include, among other things, accounts and accounts receivable. On September 29, 1988, New West filed in Missouri a U.C.C. Financing Statement to perfect its personal property interests provided for in the Second Modification.

The debtor filed for Chapter 11 relief on April 7, 1989. New West filed a notice pursuant to 11 U.S.C. § 546(b) immediately after the petition was filed.

The debtor contends that the hotel room revenues constitute accounts and accounts receivable which are a personal property interest under Missouri law. Accordingly, the debtor asserts that 11 U.S.C. § 546(b) does not govern the post-petition perfection of New West's lien in the room revenues. In addition, the debtor maintains that Section 552(b) in conjunction with Mo.Ann. Stat. § 400.9–306 operates to limit New West's lien in the hotel room revenues as of the petition date to the greater of those funds received during the ten days prior to

the petition or the room revenues on hand as of the petition date.

New West asserts that the hotel revenues are rents rather than accounts upon which New West is perfected pursuant to its Section 546(b) notification. Alternatively, New West contends that whether the revenues are rents or accounts, the revenues are profits of pre-petition collateral upon which New West has a perfected security interest. Moreover, New West maintains that Section 552 does not operate to terminate its security interest in post-petition profits generated from the collateral acquired pre-petition.

The debtor has requested that the Court enter a summary judgment in its favor. The Court can only render summary judgment when "there is not genuine issues as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Carey v. U.S. Postal Service*, 812 F.2d 621 (10th Cir.1987). The Court cannot grant summary judgment when there is a dispute over facts that might affect the outcome of the suit under governing law.

█ The first issue to resolve is whether the hotel room revenues are secured pursuant to the Deed of Trust or the U.C.C. Financing Statement. Essentially this involves a determination of whether the hotel room revenues are or may be encompassed by the Assignment of Leases and Rents executed in conjunction with the Deed of Trust. In Missouri the "creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder" is excluded from the requirements of Article 9 of the Commercial Code. Mo.Ann.Stat. § 400.9–104(j). Hence, if the hotel room revenues are interests in realty, then they were perfected by the Deed of Trust and Assignment of Leases and Rents and are not governed by the U.C.C.

Pursuant to Missouri law, hotel revenues are personalty. *In re Greater Atlantic and Pacific Investment Group, Inc.,* 88 B.R. 356 (Bankr.N.D.Okla.1988), held that revenues received from hotel guests constituted accounts receivable. Another case, *U.S. v. PS Hotel Corp.,* 404 F.Supp. 1188 (E.D.Mo.), *aff'd,* 527 F.2d 500 (8th Cir.1975), has been cited for the proposition that "rents" in a lease provision does not include charges made for services provided, including furnishing a room for the use of a hotel guest.[1]

The loan agreement in *In re Greater Atlantic and Pacific Investment Group, Inc.,* contained language similar to that used in New West's Deed of Trust and Assignment of Rents. Applying Missouri law, the Court determined that the creditor's perfected security interest in the motel and in "all rents, issues and profits arising and to arise ... for or on account of or with respect to the Property" did not provide the creditor with a security interest in money paid by motel guests for their lodging. The court reasoned as follows:

> As a general rule, "... guests in a hotel ... are mere licensees and not tenants, and ... they have only a personal contract and acquire no interest in the realty ... the relation is not that of landlord and tenant, for, notwithstanding the guest's occupancy, it is the house of the innkeeper," (citation omitted). It follows that a hotel guest's payment to the innkeeper for lodging is in the nature of a payment under contract or on account, i.e., an "account receivable." Missouri law does not provide otherwise, *United States v. PS Hotel Corp.,* 404 F.Supp. 1188, 1192 (E.D.Mo.1975), *aff'd* 527 F.2d 500 (8th Cir.1975).

*In re Greater Atlantic and Pacific Investment Group,* 88 B.R. at 359. The court

---

1. The relevant portion of *United States v. PS Hotel Corp., supra,* determined that a lease agreement which assigned rents, etc., had to be recorded pursuant to the Uniform Commercial Code if the assignee was to have a security interest in the room revenues. The Court held that a conveyance of an interest in room revenues does not involve an instrument conveying an interest in or lien on real estate. The Court

construed the deficiently recorded assignment of rents clause as applying to the payment obligations under the lease owed to the lessor from the lessee, and not from the guests of the motel to its owner. 404 F.Supp. at 1192. Accordingly, a properly perfected security interest in the accounts receivable was entitled to priority over the lessor's interest.

also noted that at common law, "rents" were "something which a tenant renders out of the profits of the land which he enjoys." *Id.* (citation omitted). Furthermore, "[s]ince motel guests have no interest in motel realty, guests do not, strictly speaking, pay 'rent.'" *Id.* The court opined that if the debtor had leased its hotel facility to an operator-lessee and received rent from such tenant, that then the creditor's security interest might attach to such rental payments. In sum, the court concluded that payments by motel guests resemble payments under contract or on account much more nearly than lease payments or rent. *See also, In re Kearney Hotel Partners,* 92 B.R. 95 (Bankr.S.D.N. Y.1988).[2]

■ This Court is persuaded by those cases which have found hotel room revenues to be interests in personalty and therefore not excluded from the U.C.C. under Section 9–104(j). Moreover, it is established under Missouri law that a hotel guest's payment for lodging is an account receivable. Accordingly, the Court cannot entertain New West's argument that the intent of the parties in the Deed of Trust and Assignment of Leases and Rents was to secure the interest in the hotel room revenues. Notwithstanding the parties' intent, the interest in the hotel room revenues must be perfected pursuant to the provisions of Article 9 of the U.C.C., and consequently the 11 U.S.C. § 546(b) notification filed by New West does not pertain to the hotel room revenues.

It is conceded by both sides that New West did perfect its security interest in all accounts receivable when it filed the U.C.C. Financing Statement on September 29, 1988. Thus, New West has a security interest in the hotel room revenues to the extent allowed by Section 552 and state law.

The next issue before the Court is the impact of Section 552 on New West's security interest in the hotel room revenues. Section 552 provides that:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. (b) Except as provided in sections 363, 506(c), 622, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy laws, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

The legislative history reveals that Congress intended that this section would invalidate after-acquired property clauses, but not the security interests in the proceeds of pre-petition collateral. 124 Cong. Rec.H. 11,097–98 (Sept. 28, 1978); S 17,414 (Oct. 6, 1978). Furthermore, "the term 'proceeds' is not limited to the technical

---

**2.** There the court determined that under Nebraska law, a security interest in hotel room revenues must be perfected under Article 9 of the U.C.C. The case contains a cogent explanation of the difference between income from the creation or transfer of an interest in realty which is excluded by Article 9; and income generated from the use of the real estate, such as accounts receivable generated by a factory, which is governed by Article 9. The court reasoned that a hotel guest who is assigned a specific room does not obtain a specific interest in

the realty and is more akin to a person paying a greens fee for use of a golf course, than a tenant who acquires an interest in the realty. *Id.* 98–101.

In a footnote, the court distinguished the case of *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Bankr.D.Colo.1986), by noting that case did not address the questions of whether hotel room revenues comprise rents under U.C.C. Section 9–104 and whether a security interest in room revenues must be perfected under the U.C.C. *Id.* at 102.

definition of that term in the UCC, but covers any property into which property subject to the security interest is converted." H.R.Rep. No. 595, 95th Cong., 1st Sess. 376–77 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6332, 6333.

■ The Court must ascertain the nature of hotel room revenues in order to determine the effect of Section 552 on New West's security interest in those revenues. The payment for a hotel room appears to be encompassed in the U.C.C. definition of an account. Pursuant to Section 400.9–106, Mo.Ann.Stat., an account is defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." Moreover, under Missouri case authority, room revenues are accounts receivable. *See, United States v. PS Hotel Corp.*, 404 F.Supp. at 1192; *In re Greater Atlantic and Pacific Investment Group, Inc.*, 88 B.R. at 359. Thus, the Court concludes that the hotel room revenues are accounts receivable.

■ Section 552(a) was drafted to facilitate the debtor's fresh start by not subjecting property acquired post-petition to a pre-petition security agreement. *See* S.Rep. No. 989, 95th Cong. 2d Sess. 91 (1978); *In re Lawrence*, 41 B.R. 36, 37 (Bankr.D. Minn.1984), *aff'd*, 56 B.R. 727 (D.Minn. 1984). Accordingly, security interests in post-petition accounts receivable are invalidated by Section 552(a). *E.g., In re Northeast Chick Services, Inc.*, 43 B.R. 326 (Bankr.D.Mass.1984); *In re Texas Tri–Collar, Inc.*, 29 B.R. 724 (Bankr.W.D.La.1983).

■ Thus, the Court concludes that New West's security interest in post-petition accounts receivable is invalidated under Section 552(a), except to the extent provided in subsection (b).

The parties disagree over the application of Section 552(b). That section allows a security interest to extend to the debtor's pre-petition property and to the proceeds, product, offspring, rents or profits of such property acquired post-petition, to the extent allowed by the security agreement and applicable nonbankruptcy law. The debtor maintains that New West's interest is limited to the *proceeds* of the pre-petition room revenues. Conversely, New West asserts that its interest is in the *profits* which includes all post-petition room revenues.

The Court finds that the payment for the use of the hotel rooms is proceeds, not profits. Unquestionably, pursuant to Missouri law the room revenues are accounts receivable. *E.g., U.S. v. PS Hotel Corp.*, 404 F.Supp. at 1192. Also, the payment on an account receivable is *proceeds* of the account receivable. *E.g., In re Barkley*, 31 B.R. 924 (Bankr.W.D.Mich.1983); *In re Air Florida System, Inc.*, 49 B.R. 321 (Bankr. S.D.Fla.1985). Furthermore, the legislative intent that the term proceeds cover any property into which property subject to the security interest is converted, buttresses the Court's determination that the payment on the room revenue accounts receivable is proceeds.

New West, appears to assert that its security interest in profits, includes the hotel room revenues, and encompasses the Section 552(b) term to continue their security interest in post-petition profits. Relying upon the Black's Law Dictionary definition of profits, New West concludes that profits are the pecuniary gain arising from the use of the hotel. Profits is defined therein as: "The benefit, advantage, or pecuniary gain accruing to the owner or occupant of land from its actual use; as in the familiar phrase 'rents, issues and profits,' or in the expression 'mesne profits'."

New West's assertion that room revenues obtained from the use of the hotel are profits, and not proceeds, is not supported by the case authority. There are certain circumstances where the Courts have recognized an existing security interest in money obtained through the use of property, such as construction equipment or an airplane, which is collateral under the security agreement. To obtain an interest in those payments, the creditor must have a perfected interest in the "rent" by obtaining a security interest in the existing "lease". Then, the payment received for the use of the collateral is viewed as *proceeds* of that collateral. *See, e.g., In re*

*Cleary Brothers Construction Co., Inc.,* 9 B.R. 40 (Bankr.S.D.Fla.1980); *In re A.E.I. Corp.,* 11 B.R. 97 (Bankr.E.D.Penn.1981); *Feldman v. Philadelphia National Bank,* 408 F.Supp. 24, 37–38 (E.D.Penn.1976).

There are several reasons why New West's argument cannot be supported by the Section 552(b). The first is that Congress did not intend to be redundant when it used the term proceeds and profits. *Cf. Equal Employment Opportunity Commission v. Continental Oil Co.,* 548 F.2d 884 (10th Cir.1977) (where possible, statutes are to be given such effect that no clause, sentence or word is rendered superfluous, contradictory or insignificant). Second, Congressional intent is to interpret the term proceeds broadly, hence, the interpretation of profits is narrowed. Any other construction allows the term profits to subsume the term proceeds. Third, to allow a broad interpretation of the word profits would enable creditors to continue a security interest in all post-petition profits which contravenes the debtor's fresh-start, *In re Texas Tri–Collar, Inc.,* 29 B.R. 724; Section 541(a)(6), and leaves the debtor with nothing to fund the estate's reorganization or to bargain with to obtain post-petition financing. Hence, it appears that the term profits in Section 552(b) refers to the real property interest in "profits". Furthermore in this case, it has already been determined that the room revenues are personalty, it would be incongruous to hold them as personalty for one purpose and as something relating to the creation or transfer of an interest in or lien on real estate for another.

■ Next, the Court shall examine the impact of Section 552(b) on the hotel room accounts receivable in existence as of the date of petition. Payment received on an account receivable is proceeds of the account receivable. *E.g., In re Barkley,* 31 B.R. at 926–927; *In re Air Florida System, Inc.,* 49 B.R. at 324. Section 552(b) allows the interest in those proceeds to continue to the extent provided by applicable state law.

A review of the relevant cases construing the effect of § 552(b) offers guidance in determining the extent of a pre-petition perfected lien in proceeds. The cases that have applied the provision "proceeds of pre-petition collateral" have used it to continue a security interest in proceeds of an identifiable pre-petition contract received post-petition. *E.g., In re Air Florida System, Inc.,* 49 B.R. 321; *In re Slab Fork Coal,* 784 F.2d 1188 (4th Cir.1986), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).

There is a line of cases which involve liens on federal payment-in-kind (PIK) proceeds. In *In re Sunberg,* 729 F.2d 561 (8th Cir.1984), the court held that a properly perfected post-petition security interest in "crops, growing crops, livestock, farm products, equipment inventory, fixtures, contract rights, accounts and general intangibles" coupled with the fact that Iowa law had incorporated the 1972 amendments to the U.C.C., meant that the creditor retained a perfected lien in PIK proceeds arising from contracts signed pre-petition, even though the PIK payment would occur post-petition. *See also, J. Catton Farms v. First National Bank of Chicago,* 779 F.2d 1242 (7th Cir.1985).

Another case applying Section 552(b) is *In re Slab Fork Coal Co.,* 784 F.2d 1188 (4th Cir.1986), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). There the debtor had a contract to furnish coal for a set price to Armco Steel. Pre-petition, the debtor pledged that contract and its proceeds to a bank. Armco owed Slab Fork $900,000 as of the date of petition. Post-petition, Slab Fork contracted with another company to continue to supply Armco, but at a price less than the original contract price so that Slab Fork received an ongoing profit. Relying upon the ruling in *In re Sunberg,* the court held that both the $900,000 and the profit generated by the third party's post-petition delivery of coal were security for the bank's debt.

Finally, in *In re Grassridge Industries, Inc.,* 78 B.R. 978 (Bankr.W.D.Mo.1987), the court held that the bank's security interest in a pre-petition construction contract continued in the post-petition contract payments to the debtor. The court noted that

the security agreement and the Kansas version of the U.C.C., allowed the bank's interest in the specifically identified contract to survive the filing of the debtor's petition under Section 552(b).

As is evident from the cases construing Section 552(b) the role of the state's version of the U.C.C. is usually a determinative factor of whether the security interest in proceeds survives the filing of the bankruptcy. In Missouri, the U.C.C. definition of proceeds "includes whatever is received upon the sale, exchange, collection or other disposition of collateral[3] or proceeds ... Money, checks, deposit accounts and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'." Section 400.9–306(1), Mo.Rev.Stat. ·

■ When a debtor files for bankruptcy, a creditor's right to proceeds is limited by Section 400.9–306(4). *Accord In re Trans–Texas Petroleum Corp.* 33 B.R. 67 (Bankr. N.D. Texas 1983); *In re Grassridge Industries, Inc.,* 78 B.R. 978; *Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293 (10th Cir. 1986). Section 400.9–306(4) provides that:

> In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:
>
> (a) in identifiable noncash proceeds and in separate deposit accounts containing only proceeds;
>
> (b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;
>
> (c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

> (d) in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is
>
> (i) subject to any right of setoff; and
>
> (ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4).

The debtor asserts that because all of its money was held in bank accounts, the limitations of 9–306(4)(d)(ii) apply.[4] That in and of itself is insufficient to apply that subsection. Furthermore, the Court does not have enough facts before it to determine that New West's interest in hotel room revenues is actually limited by subsection (d)(ii). Accordingly, the Court cannot enter summary judgment in favor of the debtor on that issue.

■ The Court is able to determine as a matter of law that New West has a security interest in hotel room revenues, accounts receivable[5], *in existence as of the date of the petition* and the proceeds derived from those accounts pursuant to Section 9–306(4). More specifically, pursuant to subsection (4)(a) New West has a security interest in identifiable noncash proceeds, such as then existing room reservations for post-petition dates, and in separate deposit accounts that contained only proceeds. *See e.g., In re Grassridge Industries, Inc.,* 78 B.R. at 981. As for subsection (4)(b), New West has an interest in those identifiable cash proceeds, payment from hotel room

---

3. "'Collateral' means the property subject to a security interest, and includes accounts ..." Section 400.9–105(1)(c), Mo.Rev.Stat.

4. The debtor's assertions are based in part upon the erroneous belief that Missouri operates under the 1962 version of the U.C.C. Missouri adopted the 1972 version in 1988.

5. New West has a security interest in all pre-petition accounts receivable. The analysis is limited only to the hotel room revenues, but no restrictions beyond those set forth in the U.C.C. are intended to apply if the room revenues were co-mingled with other accounts receivable and their proceeds.

**998**

guests, in the form of money that was neither commingled with other money nor deposited in a deposit account prior to the bankruptcy. Pursuant to subsection (4)(c), New West has a perfected interest in the identifiable cash proceeds, from hotel room revenues, in the form of checks and the like which were not deposited in a deposit account prior to the bankruptcy. Finally, New West has an interest in commingled cash and deposit accounts to the extent provided in subsection (d).

Section 552 contains an exception which based upon the equities of the situation, after notice and a hearing, allows the Court to order that the creditor's valid security interest in proceeds will not be allowed to attach to the post-petition proceeds.[6] Hence, the Court may order that the creditor's security interest in proceeds will not apply to the extent of the estate's expenditures. *E.g., In re Hamilton*, 18 B.R. 868 (Bankr.D.Colo.1982) (debtor's costs of maintaining, harvesting, and marketing crops, part of which were held to be the creditor's collateral, would be deducted from the proceeds of sale of crops pursuant to § 506(c)).

The Court does not find that it is appropriate to apply the equitable exception in this instance. There are not enough facts before the Court to determine that the interest of the rehabilitative purposes of the Code outweighs New West's rights as a secured creditor in the post-petition proceeds in which it is perfected.

In conclusion, as a matter of law, the Court determines as follows. The hotel room revenues generated by the St. Louis Clarion Hotel are personalty, accounts receivable. New West's interest in those accounts receivable is subject to the U.C.C. New West properly perfected its interest in the accounts receivable. That interest continues to the extent permitted by 11 U.S.C. § 552 and Section 400.9–306(4), Mo.Rev.

Stat., as set forth in the opinion. Accordingly, the debtor is entitled to summary judgment on those issues to the extent of the Court's ruling.

SO ORDERED.

---

**6.** The legislative history states that:
The exception covers the situation where raw materials, for example, are converted into inventory, or inventory into accounts, at some expense to the estate, thus depleting the fund available for general unsecured creditors, but is limited to the benefit inuring to the secured

creditor thereby. Situations in which the estate incurs expense in simply protecting collateral are governed by 11 U.S.C. § 506(c). S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5877. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 376–77 (1977).