PULLMAN PALACE CAR COMPANY V. JESSIE LOWE.

[FILED DECEMBER 17, 1889.]

1. **Sleeping Car Companies:** LIABLE FOR THEFT OF PASSEN-
GER'S APPAREL. A sleeping car company, so far as it renders
service similar in kind to an innkeeper, is subject to the same lia-
bilities ; and where an article of wearing apparel belonging to a
passenger in one of such cars has been placed in the care of the
porter, and is stolen from the car, the company will be liable
therefor.

2. The words " Guest" and "Lodger" defined.

ERROR to the district court for Douglas county.    Tried
below before DOANE, J.

*Howard B. Smith,* for plaintiff in error:

The Pullman Palace Car Company is not liable either as
a common carrier or as an innkeeper. (*Blum v. Southern P.
P. C. Co.,* 1 Flippin [U. S.], 500; *Pullman P. C. Co. v.
Smith,* 73 Ill., 360; *Woodruff S. & P. C. Co. v. Diehl,* 84
Ind., 474; *Clark v. Burns,* 118 Mass., 275; *Lewis v. N.
Y. S. C. Co.,* 143 Id., 267; *Ill. Cent. R. Co. v. Handy,* 63
Miss., 609; *Pullman P. C. Co. v. Pollock,* 69 Tex., 120;
*Pullman P. C. Co. v. Gaylord,* 23 Am. L. Reg. [Ky.], 788;
*Same v. Gardner,* 16 Am. & Eng. R. R. Cases, 324.)    At
any rate the company is not liable in the present case; as the
overcoat was never delivered to it and it never accepted, but
·expressly disclaimed, control thereof. (Cases *supra; Tower
v. Utica etc., Co.,* 7 Hill [N. Y.], 47 ; *Blanchard v. Isaacs,* 3
Barb., [N. Y.], 388 ; *Packard v. Getman,* 6 Cow. [N. Y.],
757; *Welch v. P. P. C. Co.,* 16 Abb. Pr. N. S. [N. Y.], 352;
*Steamboat v. Vanderpool,* 16 B. Mon. [Ky.], 302; *Wilcox
v. Steamboat,* 9 La. [O. S.], 53; *Hills v. C., R. I. & P. R.
Co.,* 72 Ia., 228; *The R. E. Lee,* 2 Abb. [U. S.], 49.)
Even conceding for the sake of argument that there was

such a delivery as imposed *some* responsibility upon the company, it would not have been bound to use more than ordinary care, nor would it have been liable if plaintiff were guilty of contributory negligence. (*Palmeter v. Waggener*, 11 Albany L. J., 147, and cases first cited above.) The loss complained of occurred during the day, and the case is to be distinguished from those above cited where defendant was held liable for losses occurring at night. In those of the above cases where the loss occurred in the daytime, the facts were materially different from those of the present case. There is no evidence that the porter was absent from the car when the coat was stolen. He is last mentioned in the testimony as standing on the platform, and the presumption of law is that he remained there. (Lawson, Presumptive Ev., Rule 30 [G].) To sum up : the obligation of a sleeping car company ends when it has maintained a reasonable watch over its passengers and their luggage, while the former are asleep.

*A. Steere, Jr., contra:*

A sleeping car company undertakes to serve the public within the scope of its business, exactly as a common carrier or an innkeeper, and hence is under similar obligations. (*Nevin v. Pullman P. C. Co.*, 106 Ill., 222; *Pullman P. C. Co. v. Gardner*, 16 Am. & Eng. R. R. Cases, 324; *Blum v. Southern P. P. Car Co.*, 1 Flippin [U. S.], 500; *Welch v. Pullman P. C. Co.*, 16 Abb. Pr. N. S. [N. Y.], 352; *Thompson v. Lacy*, 3 B. & Ald., 283–7.) The company may impose conditions: *e. g.*, pre-payment (*Pullman P. C. Co. v. Reed*, 75 Ill., 125; Schouler, Bailments, 290); and sobriety on the part of the passenger (*Nevin v. Pullman P. C. Co., supra*); but when these are met, the obligation to serve is complete. As to an innkeeper's liability and the reasons therefor : *Mason v. Thompson*, 9 Pick. [Mass.], 280; *Hulett v. Swift*, 33 N. Y., 572; *Gales v. Hailman*, 11 Pa. St., 515. With the advance of civilization, the sleep-

ing car has largely superseded the old-time inn, and simi-
lar rules should be applied to the liability of the owners of
each.  Public policy and the proper protection of travelers
require such rules, and sleeping car passengers should not,
in case of loss, be compelled to prove negligence.  The com-
pany was negligent in not properly guarding against theft,
and is liable. (*Woodruff S. & P. C. Co. v. Diehl*, 84 Ind.,
484; *Lewis v. N. Y. S. C. Co.*, 143 Mass., 267; *Pullman
P. C. Co. v. Gaylord*, 23 Am. L. Reg. [Ky.], 788; *Blum
v. Southern P. P. C. Co.*, and *Pullman P. C. Co. v. Gard-
ner, supra.*)  The fact that the loss occurred in the day-
time does not change the liability, especially since it oc-
curred at an eating station. (*Pullman P. C. Co. v. Taylor,*
65 Ind., 169.)

*Howard B. Smith,* in reply:

The undertakings of the sleeping car company are not
those of an innkeeper but of a lodging-house keeper. (2
Kent, Com., 596.)  The latter is not responsible for the
safety of his lodger's goods. (*Cromwell v. Stevens*, 2 Daly
[N. Y.], 15, and cases cited; *Holder v. Soulby*, 8 C. B. N.
S., 254; article in 14 Cent. L. J., 206.)

MAXWELL, J.

This action was brought by the defendant in error
against the plaintiff in error, to recover the value of an
overcoat, which, it is alleged, was lost or stolen from a
Pullman car, in which the defendant in error was a pas-
senger, on the Wabash Railway, from St. Louis to Council
Bluffs.  The court was requested to make special findings
in the case, which it did, as follows:

" I find, as the facts proven on the trial of this case:
That on the 18th day of April, 1887, the plaintiff took
passage at St. Louis for Council Bluffs, on the Wabash &
St. Louis R. R., and purchased a sleeping car ticket from

16                    o

the defendant's agency at St. Louis, entitling him to a lower berth in a sleeping car attached to the train which left St. Louis the evening of that day; that the train left St. Louis at 8:25 P. M.; that a short time before the train left, plaintiff entered the sleeping car, and upon doing so delivered his coat to the porter of the car, who took it and placed it in the vacant upper berth of the section of which plaintiff had secured the lower berth; that, shortly after the train started, the sleeping car conductor passed through the car and took up the ticket which had been purchased by the plaintiff, and gave him in exchange therefor another ticket, known as a 'berth ticket,' which was in turn taken up by the porter soon afterwards, when he prepared the sleeping berth for occupation by the plaintiff; that the next morning when the plaintiff arose, he took out from the upper berth a portion of his clothing, and then saw his overcoat there where it had been placed the evening before by the porter, and where he, the plaintiff, left it; that plaintiff was last to leave his berth, and, with the exception of a gentleman and lady, the last of the passengers to leave the car for breakfast that morning; that plaintiff went out to breakfast at the regular breakfast station, which occupied him about fifteen minutes, and that after breakfast he stood on the rear platform of the sleeper about ten minutes, smoking a cigar, and then went to his berth in the car, the same having been made up, and then discovered that his overcoat was missing; that he immediately called the attention of the conductor of the sleeping car to the fact, who, after first disclaiming any responsibility for the care of the coat, after a time caused a search to be made through the car, in company with the porter, for it, but without finding it, and the coat has been entirely lost to the plaintiff, and was of the value at the time of the loss of $50.   I also find that the conductor left the car at the breakfast station, and went to his breakfast at the same time as the passengers, including the plaintiff, were at their

breakfast, and that during the interval of about twenty-five minutes' absence of the plaintiff from his berth in sleeping car, between the time when he left the car for breakfast and the time when he returned into it, his berth was made up, and his overcoat abstracted.

### "CONCLUSION OF LAW.

"I find, as a conclusion of law, that defendant was guilty of negligence in not properly guarding and taking care of property of plaintiff during his necessary absence from defendant's car, and that plaintiff was not guilty of negligence in the matter.

"I therefore find that defendant is liable to the plaintiff for the value of the overcoat, to-wit, $50, with interest thereon from April 20, 1887, to the first day of this term, $3.75."

The rules of the company were also introduced in evidence in its behalf, but as the defendant in error had no notice of them, they do not enter into the case. The question presented, therefore, is the liability of a sleeping car company for the loss of necessary wearing apparel of one who had paid the necessary sleeping car charges, and was lawfully riding in one of its cars, which apparel had been placed in the care of the employes of the company. We find no case exactly in point; and as the question is a new one, not only in this state but to a great extent in the other states of the nation, we are practically without precedents to aid us, and must adopt such rule as may seem just and equitable. It may be well to consider what the company undertakes to perform, and also what it does not undertake. The latter proposition will be considered first. It does not undertake to furnish the railway for its cars to run upon, nor the motive power to propel them, and hence is not entitled to compensation for the ordinary carriage of passengers. It does invite, for hire, all passengers holding first class tickets to occupy its cars. In effect it says to all

such passengers, We will furnish you safe, pleasant, commodious cars, with all possible facilities to prevent weariness and fatigue, with comfortable sleeping accommodations and the necessary toilet facilities, if you pay the price demanded in addition to the ordinary fare.

The nature of this undertaking is the question for consideration. On the one hand it is claimed that so far as the company holds itself out as performing the duties of an innkeeper, so far it should be charged with the strict liability of the same. On the other, it is sought to make the liability of the company merely that of a lodging-house keeper. In the very able and carefully prepared briefs of the attorney for the plaintiff in error we find the following objections to charging the company with the liability of an innkeeper. He says:

"It undertakes:

"(1.) To furnish accommodations to 'first class' passengers *exclusively*.

"(2.) To furnish toilet accommodations to *such* passengers.

"(3.) To furnish a certain *specified* seat or bed to *such* a passenger.

"(4.) To furnish a servant who will respond to all *proper* demands on his service by *such* passengers promptly and politely."

But to do these four things for a *limited* time which is agreed upon between it and *each* passenger *in advance*.

It does not make even this agreement with all those who travel by rail. It makes this agreement with first class passengers exclusively.

The distinction between an innkeeper and a lodging-house keeper is set forth in many cases, but is very well drawn in the case of *Cromwell v. Stevens*, 2 Daly's Reports, 15 (1867), from pages 21 to 26 inclusive.

After quoting the definition of an inn as given by Chief Justice Oakley in *Wintermute v. Clark*, 5 Sandf., 247, to-

wit :  " Where *all* who come are received as guests, without any previous agreement as to the *duration* of their stay or as to the *terms* of their entertainment," and from *Willard v. Reinhardt*, 2 E. D. Smith, 148, in which the distinction between a boarding-house and an inn was declared to be this : " In a boarding-house the guest is under an express contract at a *certain rate* for a *certain period* of time, but in an inn there is no express engagement, the guest being on his way, is entertained from day to day according to his business, upon an implied contract ; " and from *Carpenter v. Taylor* 1 Hilt., 195, as follows : " Mere eating-houses cannot be considered as inns.   They are wanting in some of the requisites necessary to constitute them inns."

It will be seen that a distinction is attempted to be drawn between the sleeping car company and an innkeeper because only a certain class can occupy such cars, viz., persons holding first class tickets, whereas at an inn all who conduct themselves properly may be entertained.   There is great confusion in the decisions as to what constitutes an inn.   In Calye's case, 8 Coke, 32, it was held that inns were instituted for passengers and wayfaring men.   In another case an inn is defined to be a house where the traveler is furnished all he has occasion for while on the way. (*Thompson v. Lacy*, 3 B. & Ald., 283.)   Bouvier defines innkeeper to be " the keeper of a common inn for the lodgment and entertainment of travelers and passengers, their horses and attendants, for a reasonable compensation."   The innkeeper is bound to take in and receive all travelers and wayfaring persons and entertain them if he can accommodate them, and the same is true of a sleeping car company as to all passengers holding a first class ticket.   The fact that persons holding second or third class tickets agree in effect in consideration of lower fare to waive their right to enter a sleeping car does not enter into the case any more than that of a traveler who, to avoid the expense of an inn, should stop at a private house.   In any event the company

which sells sleeping car tickets to all first class passengers that may pay the price, to that extent stands in the same relation as an innkeeper who must for hire entertain those asking for entertainment.

A more difficult question is to properly define the word "guest" at a hotel. Parsons defines a "guest" to be one who comes "without any bargain for time, remains without one, and may go when he pleases." (2 Parsons on Contracts, 151.) This is not sufficiently comprehensive to be a proper definition. In *Walling v. Porter*, 9 Am. Law Reg. (N. S), 618 (35 Conn., 183), the supreme court of Connecticut defines the word "guest" as follows : "A 'guest' is one who patronizes an inn as such. But it is said that none but a traveler can be a guest at an inn in a legal sense." We do not suppose that the court intended in the definition above quoted to lay stress upon the word traveler.

It is used in a broad sense to designate those who patronize inns. In *Wintermute v. Clark*, 5 Sandf., 247, the court say, that in order to charge a party as an innkeeper, it is not necessary to prove that it was only for the reception of travelers that his house was kept open, it being sufficient to prove that all who came were received as guests without any previous agreement as to the time or terms of their stay. A public house of entertainment for all who choose to visit it, is the true definition of an inn. These definitions are really in harmony with each other. Webster defines a traveler as " one who travels in any way." Distance is not material. A townsman or neighbor may be a traveler, and therefore a guest at an inn, as well as he who comes from a distance, or from a foreign country. If he resides at the inn, his relation to the innkeeper is that of a boarder ; but if he resides away from it, whether far or near, and comes to it for entertainment as a traveler and receives it as such, paying the customary rates, we know no reason why he should not be subjected to all the duties of a guest, and entitled to all the rights and privileges of one.

In short, anyone away from home, receiving accommodations at an inn as a traveler is a guest, and entitled to hold the innkeeper responsible as such.

This we think is a correct definition of the word "guest," and we adopt the same. (*Berkshire Woolen Co. v. Proctor,* 7 Cush., 417.)

In the latter case the guest made an arrangement as to the price to be paid per week, and it was held that this did not take away his character as a traveler and guest. (See also, *Hall v. Pike,* 100 Mass., 495; *Norcross v. Norcross,* 53 Me., 163; *Pinkerton v. Woodward,* 33 Cal., 557, and a valuable article in 14 Cent. Law Journal, 206; *Hancock v. Rand,* 17 Hun, 279.)

In *Dunbier v. Day,* 12 Neb., 597, this court held that an innkeeper was bound to take all possible care for the safety and security of the goods, money, etc., of his guests while in his house. And if the goods or money of a guest be stolen from the inn through no fault or neglect of the guest, nor by a companion guest, and there is no evidence to show how it was done, or by whom, the innkeeper is liable for the loss. This, we think, is a correct statement of the law.

A lodger is defined by Bouvier to be "one who inhabits a portion of a house of which another has the general possession and custody."

There is some confusion in the decisions, arising mainly from the want of a clear definition of what constitutes a guest as distinguished from a mere lodger. Generally, however, a lodger is one who, for the time being, has his home at his lodging place. (*Phillips v. Evans,* 64 Mo., 17.) The rule under the decisions is not of universal application, but nearly so. (*Phillips v. Henson,* 30 Moak, 19; *Thompson v. Ward,* L. R. 6 C. P., 327; *Bradley v. Baylis,* 8 Q. B. D., 195; *Ness v. Stephenson,* 9 Q. B. D., 245; *Hickman v. Thomas,* 16 Ala., 666; *Ullman v. State,* 1 Texas, Court of App., 220.

It will be seen that the engagement of the sleeping car company, so far as it goes, is exactly the same as the duties assumed by an innkeeper. A passenger on entering a sleeping car.as a guest—because that is what he is in fact— necessarily must take his ordinary wearing apparel with him, and some articles for convenience, comfort, or necessity. The articles, when placed in the care of the company's employes, are *infra hospitium*, and are at the company's risk.

The liability of innkeepers is imposed from considerations of public policy, as a means of protecting travelers against the negligence and dishonest practices of the innkeeper and his servants. Occasionally, no doubt, the innkeeper is subjected to losses without any fault on his part. This, however, is one of the burdens pertaining to the business, and the courts have deemed it necessary to enforce this wholesome rigor to insure the security of travelers. Besides, where loss is sustained, neither party being in fault, it must be borne by one of them, and it is no more unjust to place it on the innkeeper than on the guest. The liabilities incident to the business are to be considered in fixing the charges for the service. (*Mason v. Thompson*, 9 Pick., 280.)

Except in the matter of furnishing meals, there seems to be no essential difference between the accommodations at an inn and those on a sleeping car, except that the latter are necessarily on a smaller scale than at an inn.

: In both cases the porter meets the traveler at the door and takes whatever portable articles he may have with him. He waits upon him and the other passengers in the car so long as they remain therein. The traveler is not required to sit in his seat during the day, but may, if he so desire, go forward into the other cars on the train, and at stations may go out on the platform.

A passenger in a sleeping car need not avail himself of these privileges, but the fact that he may do so, and that

many persons actually do avail themselves of the same, is well known to every traveler, and to the company, and is a circumstance in the case.

If it is said that it would be unjust to hold the company to the same liability as an innkeeper, because thieves might engage one or more berths in a car, and at the first opportunity leave the car carrying what articles they could steal before leaving, the same is true of an innkeeper. Thieves, in the garb of respectable people, may take rooms at an inn, and afterwards steal what they can and escape, yet no one would contend that the innkeeper would not be responsible for the property so stolen, and this whether it is stolen at night or in the daytime; yet in many of the large inns, of this country at least, there are numerous doors for ingress and egress, while in a sleeping car there are but two. Were meals served on a sleeping car, no one would contend that it differed from an inn in its accommodations.

In this state meals are furnished on the through trains, and a passenger need not leave the train from the time of entering it until he reaches the end of the line.

This, however, does not appear to have been the case on the railway in question.

But the fact that meals are taken at designated stations on the line of the road, instead of on the train itself, does not change the character of the service rendered. So far as such services are rendered, they are the same in kind as those furnished by an innkeeper; and the security of travelers, and as a means of protecting them, not only against the negligence but also against the dishonest practices of the agents or employes of the sleeping car company, requires that the company, so far as it renders service as an innkeeper, shall be subject to like liabilities and obligations. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.