**In re KEARNEY HOTEL PARTNERS, Akron South Hotel Partners, HPA Partners, Consolidated Debtors.**

**KEARNEY HOTEL PARTNERS, Akron South Hotel Partners and HPA Partners as Debtors-in-Possession, Plaintiffs,**

v.

**Wallace A. RICHARDSON, Trustee Under Deed of Trust for Kearney Convention Center, Inc. Defendant.**

Bankruptcy Nos. 87 B 10130 (HCB), 87 B 10443 (HCB), 87 B 10557 (HCB). Adv. No. 88–5639A.

United States Bankruptcy Court, S.D. New York.

Oct. 20, 1988.

**96**

Law Offices of Robert L. Howard, New York City, by Robert L. Howard, for plaintiffs.

Stroock & Stroock & Lavan, New York City, by Fred S. Hodara, for defendant.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

By cross-motions for summary judgment, we are called upon to determine whether (i) a security interest in hotel room revenues in Nebraska is to be perfected under the Uniform Commercial Code or falls within the exemption of U.C.C. § 9–104(j) and (ii) whether a security interest in rents may be perfected after the filing of a bankruptcy petition pursuant to 11 U.S.C. § 546(b) and thereby escape avoidance under 11 U.S.C. § 544(a) even though the perfection would not relate back to a time pre-petition under applicable state law. We hold that the Nebraska courts would not apply U.C.C. § 9–104(j) to hotel room revenues principally because such revenues are not derived from the creation of an interest in property and because to hold otherwise in light of 11 U.S.C. § 546(b) adds considerable uncertainty to hotel financing. We further hold that 11 U.S.C. § 546(b) is to be interpreted to permit perfection only if the act of perfection relates back under applicable state law principally because the legislative history unequivocally so states.

1. There is no issue as to the propriety of summary judgment if plaintiffs prevail on these two issues. If defendant prevails, the amount of

I.

The Debtors, HPA Partners ("HPA"), Kearney Hotel Partners ("Kearney"), and Akron South Partners seek an order granting summary judgment on their complaint seeking to avoid, pursuant to § 544(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (1986) (the "Bankruptcy Code" or the "Code"), a pre-petition assignment of cash collateral of a Holiday Inn owned by Kearney in Kearney, Nebraska. By cross-motion, defendant Wallace A. Richardson, Trustee under a Deed of Trust for Kearney Convention Center, Inc., seeks summary judgment denying such relief and thereby establishing its entitlement to all such cash collateral except that attributable to sales of food and beverage and similar services. With respect to the two issues described above, the parties agree that the facts are not in dispute and the motions were limited to these two issues at the hearing held on September 23, 1988.[1]

By a Deed of Trust with Security Agreement and Assignment of Leases and Cash Collateral (the "Deed of Trust") dated October 23, 1983 Oppenheimer HPA Partners (now known as "HPA Partners") granted to Kearney Convention Center, Inc. ("KCCI"), as seller, a purchase money security interest in a hotel operating in Kearney, Nebraska under the Holiday Inn trademark, together with the real property on which it is situated (the "Premises") and related fixtures, rents and proceeds.

Under the Deed of Trust, as security for all of the indebtedness evidenced by a promissory note or secured by the Mortgage, HPA Partners assigned all of the Cash Collateral derived from the property to KCCI (Deed of Trust Art. 4(c)). Cash Collateral is defined in Section 1.1(b) of the Deed of Trust as including "all rents, income, receipts, revenues, issues, profits, and other income of any nature now due or which may become due or to which Mortgagor may now or hereafter ... become entitled to...."

cash collateral subject to its lien will be determined at trial.

KCCI properly filed and recorded the Deed of Trust on October 28, 1983 in the Office of the Register of Deeds for the County of Buffalo, State of Nebraska, as required under Nebraska law for the perfection of an interest in realty. Neb.Rev. Stat. § 76–237 (Reissue 1981). Contemporaneous with the filing of the Deed of Trust, KCCI filed a Uniform Commercial Code financing statement (UCC–1) in the same office. KCCI, however, did not take the second step of filing a financing statement with the Office of the Nebraska Secretary of State that is necessary to perfect a security interest in personalty under Article 9 of the U.C.C.Neb.Rev.Stat. § 9–401 (Reissue 1980).

HPA defaulted, in the fall of 1986, on the obligations it owed to KCCI under the Deed of Trust and Note. The value of the Premises was, at the time of the default, and apparently remains inadequate to secure the debt owed to KCCI by HPA.

After HPA's default, KCCI sought to foreclose and noticed a non-judicial foreclosure sale for January 27, 1987. KCCI did not commence a judicial proceeding and seek the appointment of a receiver pursuant to Nebraska law. Neb.Rev.Stat. §§ 25–1081(2), –1082 (Reissue 1985). Before KCCI could consummate the foreclosure sale, HPA conveyed its interest in the Premises to a newly formed entity, Kearney Hotel Partners ("Kearney") on or about January 22, 1987.

Kearney filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 26, 1987 in this Court. This case (87–B–10130) was later substantively consolidated, by court order entered on May 8, 1987, with the Chapter 11 cases filed by Akron South Hotel Partners on March 13, 1987 (87–B–10443) and by HPA Partners on March 27, 1987 (87–B–10557) (collectively the "Debtors" or "Plaintiffs"). The Debtors remained in possession of their properties and in operation of their businesses pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Premises are subject to a senior lien held by the Equitable Life Assurance Society of the United States of America ("Eq-

uitable"). On or about April 23, 1987, Equitable filed a Motion for Relief From Automatic Stay Or in the Alternative For Adequate Protection pursuant to § 362(d) of the Code (the "Equitable Motion"). On consent of the Debtors and Equitable, this Court entered an order on May 11, 1987, directing, *inter alia*, that Kearney "shall deposit all cash receipts of the [Premises] whether heretofore or hereafter received, in a bank account[s] separate from all other bank accounts of the Debtor," pending the completion of a consolidated preliminary and final hearing on the Equitable motion (the "Equitable Order").

KCCI served a Notice of Perfection of Lien Pursuant to Deed of Trust with Security Agreement and Assignment of Leases and Cash Collateral (the "Notice of Perfection") on August 27, 1987 pursuant to § 546(b) of the Bankruptcy Code. KCCI filed a Motion for Relief from the Automatic Stay, Sequestration of Cash Collateral and, in the Alternative, Adequate Protection on September 3, 1987.

The Debtors, KCCI and Equitable entered into a Stipulation and Order Regarding Adequate Protection and Related Matters (the "Stipulation"), on November 9, 1987 pursuant to which the Debtors agreed, *inter alia*, to pay KCCI adequate protection payments in respect of KCCI's alleged interest in the Premises. Since the question of whether KCCI had perfected an interest in hotel room revenues was disputed by the parties, the Stipulation further provided at paragraph 7 that the Equitable Order regarding the segregation of cash receipts generated by the hotel "shall remain in full force and effect and shall be deemed to be for the benefit of KCCI as well as of Equitable."

In this adversary proceeding, the complaint asserts that the KCCI's security interest in the cash collateral of the hotel is voidable pursuant to § 544(a) of the Bankruptcy Code and seeks judgment declaring that KCCI has no valid cash collateral lien upon the rents and profits of the Kearney Holiday Inn, or, alternatively, if KCCI is found to have such a lien, determining the amount thereof, and permitting the Debt-

ors to use the remainder. In his answer, defendant denies that the KCCI lien is voidable and asserts counterclaims seeking judgment declaring (i) that it had a perfected and non-voidable lien on all of the cash collateral of the hotel and that (ii) the filing by KCCI of its § 546(b) notice served to effectuate KCCI's interest in the rents and profits to the extent that such interest was not previously fully perfected.

At issue here are the room receipts of the hotel and payments under a gas station lease and payments by the owner of vending and entertainment machines for rental of space at the hotel where the machines are located. KCCI does not claim an interest in the proceeds of food and beverage sales and telephone receipts, which it concedes are proceeds of personalty. It appears that room revenues amounted to $2,817,017.54, or approximately 83% of the hotel's gross income, from the date of the petition through July 31, 1988. The gas station lease and the vending/entertainment machine space rental apparently generated profits of $82,721.14 for the same time period, or approximately 3% of gross income.

## II.

KCCI asserts that it has a valid, fully perfected and unavoidable security interest in the cash collateral of the Kearney Holiday Inn, including the revenues from the use of its hotel rooms, through having recorded the Deed of Trust and thereby perfecting an interest in realty under Nebraska law. It claims that the room revenues are the proceeds of an interest in realty, comparing these revenues to rents attributable to leases on residential or commercial property. In opposition, the Debtors maintain that the interest in the hotel room revenues is not an interest in realty, but rather an interest in personalty that must be perfected pursuant to Article 9 of the Nebraska Uniform Commercial Code. Accordingly, they argue that since KCCI failed to file a financing statement with the Nebraska Secretary of State, as is required to perfect an interest in personalty, KCCI has an unperfected security interest in the hotel room revenues.

The courts in Nebraska have not yet addressed the issue of whether a security interest in hotel room revenues is to be perfected under the U.C.C. or whether such an interest falls within the exemption of U.C.C. § 9–104(j). Our task is thus to determine how the Nebraska Supreme Court would construe U.C.C. § 9–104(j).

### (A.)

Section 9–104(j) of the U.C.C. was adopted by the Nebraska legislature without amendment. It states:

This article does not apply ... (j) except to the extent that provision is made for fixtures in Section 9–313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder; ...

Neb.U.C.C. § 9–104(j).

As in any case involving the construction of a statute, the starting point is the language of the statute itself. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (Powell J. concurring). The language of § 9–104(j) clearly excludes only interests in real estate, including "a lease or rents thereunder," from the requirements of Article 9. By this, mortgages, leases and other instruments conveying an interest in real estate are excluded. Conversely, the language gives no indication that income from the use of real estate, such as accounts receivable generated by a factory, are excluded. Although the realty may be the subject of a mortgage, the creation of a security interest in such income is not the creation of an interest in realty. Rents are different. They are income from the creation of an interest in property. Thus the statutory language of U.C.C. § 9–104(j) indicates that only the creation or transfer of an interest in realty and the income from that interest in realty are excluded from Article 9. The Official Commentary offers no other interpretation. Security interests in income not attributable to the creation of an interest in realty

are, therefore, governed by Article 9. U.C.C. § 9–102(1).

The significance of the plain meaning of the statutory language in this case lies in the general rule that "... guests in a hotel ... are mere licensees and not tenants, and ... they have only a personal contract and acquire no interest in the realty...." *In re Greater and Atlantic and Pacific Inv. Group., Inc.*, 88 B.R. 356, 359 (Bankr.N.D. Okla.1988)(quoting from 49 Am.Jur.2d *Landlord and Tenant* § 6 (1970).) *See also DeWolf v. Ford*, 193 N.Y. 397, 86 N.E. 527, 530 (1908) (A room in an inn is not, in a legal sense, the "dwelling house" of a guest, and the relation is not that of landlord and tenant, for notwithstanding the guest's occupancy, it is the house of the innkeeper). There may be exceptions in residential hotel cases or in instances where the terms of the contract between the parties, including the length of the period the room is used, the character of the premises, the nature of the business operated thereon, and the extent of the control or supervision maintained by the proprietor or possessor over the premises might indicate the creation of a tenancy. *Marden v. Radford*, 229 Mo.App. 789, 84 S.W.2d 947 (1935). But these exceptions do not apply to the relationship of an overnight guest to the hotel in which he stays.

> A tenant is deemed to have exclusive legal possession of the demised premises and stands responsible for their care and condition. A guest, on the other hand, has merely the right to the use of the premises while the innkeeper retains his control over them, is responsible for the necessary care and attention and retains the right of access for such purposes.

*Buck v. Del City Apartments, Inc.*, 431 P.2d 360, 363 (Okl.1967). *See also State of Arizona v. Carrillo*, 26 Ariz.App. 113, 546 P.2d 838 (1976).

To hold otherwise would totally distort § 9–104(j) and bring within its ken security interests in income attributable to other licencees of realty, *e.g.:* greens fees paid for use of golf courses, roller and ice skating rink fees, and theatre and stadium reserved seat tickets. Even though one purchases a ticket to a specific seat in a stadium, he acquires no specific interest in the seat. Like a hotel guest who is assigned a specific room,

[t]he purchaser receives a "general intangible" in the nature of a license to come on to the raceway premises and a right to view a performance (a race) ... The raceway simultaneously acquires an account receivable which is immediately converted into proceeds.

*Klinger v. Pocono International Raceway, Inc.*, 31 U.C.C.Rep. 1223, 1230, 289 Pa.Super. 484, 433 A.2d 1357 (1981); *accord, Buck v. Del City Apartments, Inc.*, 431 P.2d at 363. As these cases make clear, a temporary right to enter upon real property is not the same as an interest in real property. Perfection of a security interest in those proceeds is governed by Article 9 and is not exempt under § 9–104(j). *Klinger*, 31 U.C.C.Rept. at 1230, 289 Pa.Super. 484, 433 A.2d 1357.

Furthermore, since "there is no canon against using common sense in construing laws in saying what they obviously mean," *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929), it is appropriate to observe that when a person checks into a hotel, he acquires only a limited right to use the premises. Unlike a tenant who rents an apartment of his choosing, a hotel guest is typically assigned a room. Not only is he entitled to use that room, but he is also entitled to use the lobby, dining room, swimming pool, tennis court, ice machine and the various other amenities of a hotel. It simply would distort the statutory language to hold that a guest in a hotel is a lessee and that the fee paid, although perhaps referred to in common parlance as "rent," is rent attributable to a lease.

(B.)

Supporting this construction of § 9–104(j) are the twin policy concerns that U.C.C. Article 9 is designed to provide a simple and unified structure within which the broad variety of present-day secured financing transactions can go forward with less cost and greater certainty, (Official Comment to Neb. UCC 9–101) and the unlikely notion that the Nebraska Supreme Court would hold otherwise and require deeds of trust for hotel cash collateral fi-

nancing. No reason has been advanced for precluding a lender from relying on the UCC-1 filings at the Office of the Secretary of State in determining lending on the basis of obtaining a security interest in the room revenues of a hotel in light of the general rule that a hotel guest does not obtain an interest in realty. Indeed, the policy should lead to the opposite conclusion.

Similarly, while the local nature of real estate and conveyancing practice support use of the traditional recordation of instruments in recordable form that convey an interest in realty, no such interest requires the use of such instruments with respect to revenues derived from licensees. Such a requirement, moreover, would be inconsistent with the Nebraska recording statute, Neb.Rev.Stat. §§ 76–201 to –257 (Reissue 1981). Section 76–237 of that statute sets forth the filing requirements for recording a deed. A deed is defined in the same statute to embrace security interests in real property and consists of

> every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and leases for one year or less time.

Neb.Rev.Stat. § 76–203.

It, therefore, does not appear that a security interest pertaining to a loan collateralized only by hotel room revenues would be recordable. Thus, to hold that hotel room revenues are exempt from Article 9 would require the lender to obtain a mortgage and consequently restrict the ability of hotels in Nebraska to obtain financing. It is highly unlikely that the Nebraska legislature, in adopting the Uniform Commercial Code, intended such consequences.

### (C.)

Nevertheless, KCCI argues that interpretation of § 9–104(j) to permit Article 9 to apply to security interests in hotel room revenues is inconsistent with other Nebraska statutes speaking of room revenues as "rent" and therefore § 9–104(j) should be interpreted to exclude revenues.

Nebraska has a panoply of statutes dealing with such discreet topics as "hotels," "guests," "tenants," and the like. No single Nebraska statute, however, specifically addresses the status of hotel room revenues in relation to UCC Article 9. More importantly, there is no indication that the Nebraska legislature sought to coordinate § 9–104(j) to these statutes or them to § 9–104(j). While other statutes are significant guide posts in the construction of a statute enacted as part of an interrelated statutory scheme, *Blue Chip Stamps v. Manor Drug Stores, Inc.*, 421 U.S. at 733, 95 S.Ct. at 1924, none of these statutes are interrelated to § 9–104(j).

Furthermore, examination of these statutes reveals that the Nebraska legislature has repeatedly recognized the difference between a guest in a hotel and a tenant under a lease. For example, the Nebraska Uniform Residential Landlord and Tenant Act, Neb.Rev.Stat §§ 76–1401 to –1449 (Reissue 1986), the purpose of which is, *inter alia,* to "revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant ...," § 76–1402(2)(a), specifically excludes from the application of the Act the "[t]ransient occupancy in a hotel or motel." § 76–1408(4).

Consistent with that exclusion is Chapter 41, "Hotels and Inns," Neb.Rev.Stat. §§ 41–201 to –214 (Reissue 1985). In Article 2, dealing with the liability of the proprietor, "guest" is defined to

> include all persons who have registered on a register provided for such purpose by hotels, motels, and rooming houses, whether assigned a room or rooms or not, occupants of apartments, patrons of restaurants, or persons who have signified their intention in writing to become a guest of such hotel, restaurant, apartment house, motel, or rooming house.

§ 41–207.

Because the scope of this statute's protection covers both hotel guests and "occupants of apartments," KCCI argues that the payments generated from both hotel guests and "occupants of apartments" are the same, namely rents, and since both pay

"rents," a hotel guest is the same as a tenant. Careful scrutiny of the statute, however, reveals that the Nebraska legislature used the phrase "occupants of apartments" within its definition of "guests" and not the word "tenants" because the legislature distinguished an "occupant of an apartment" under Chapter 41, "Hotels and Inns," from a "tenant under a lease," which is governed by Article 14(a) of the Nebraska Uniform Residential Landlord and Tenant Act, §§ 76–1401 to –1449. In essence, the Nebraska legislature, by using the phrase "occupants of apartments" rather than "tenants" within its definition of "guests" recognized that some persons are furnished accommodations in apartment buildings on a basis other than pursuant to a lease, and, as such, are not "tenants." Complementing this is the limitation of the definition of "apartment house" within the context of Chapter 41, "Hotels and Inns," to "every building ... where accommodations ... are furnished for permanent guests, but where no dining room or cafe is maintained in the same building ... and where five or more tenants occupy such building[s] ..." Neb.Rev.Stat. § 41–206. In comparison, the definitions of "hotel" and "boarding house" include the provision of dining facilities for their respective "guests" who, unlike "guests" in an apartment house, do not share the premises with "five or more tenants." Neb.Rev.Stat. §§ 41–202, –205 and –206. Similarly, in addressing discrimination in public accommodations, the term "public accommodations" is defined to include, *inter alia,* "any inn, hotel, motel or other establishment which provides lodging to transient guests, ..." Neb.Rev.Stat. § 20–133 (Reissue 1987).

This consistency of approach is not made less certain by the requirement under Nebraska law that handicapped people, "shall be entitled to full and equal access to all housing accommodations offered for rent, lease or compensation in this state." Neb. Rev.Stat. § 20–131.01 (Reissue 1987). KCCI asserts that since the Nebraska legislature saw fit to distinguish between housing accommodations for "rent" and for "lease," it follows that "rents" can be derived from the use of property other than

from under a lease. That observation, however, does not change the consistent reference to hotel patrons as guests. Nor is it inconsistent with § 9–104(j) in its exclusion of leases and rents therefrom. If rents can be found other than from leases of real property, they are not covered by the language of § 9–104(j).

### (D.)

Moreover, the better reasoned cases also have found hotel room revenues to be interests in personalty and therefore not excluded from the U.C.C. under § 9–104(j). In *United States v. P.S. Hotel Corp.,* 404 F.Supp. 1188 (E.D.Mo.1975) *aff'd.* 527 F.2d 500 (8th Cir.1976), an assignee of a security interest in the motel's accounts and inventory had properly filed a UCC financing statement with the Missouri Secretary of State and had perfected its security interest in accounts receivable. The motel's former owner, lessor and assignee of the motel's "rents, issues, income and profits" had filed and recorded its lease including the assignment, with the local county recorder of deeds but had not filed an Article 9 financing statement with the Secretary of State. In holding that the exclusion contained in § 9–104(j) of the Missouri U.C.C., which is identical to § 9–104(j) as enacted in Nebraska, does not embrace motel room revenues, the district court reasoned:

> In our judgment, the statutory exclusion was not intended to apply to such accounts receivable, and the language of the statute cannot reasonably be construed to include them. This case does not involve an instrument conveying an interest in or lien on real estate. And as concerns the words "rents thereunder," what is referred to are the rents payable to the lessor under the provision of a lease, not charges made by the lessee for services it provides to its patrons, even though those services include furnishing rooms in the leased premises for the use of its guests. Hence, the mere fact that the lease and lease amendments were recorded as instruments affecting real estate does not affect the priority of

plaintiff's security interest in the accounts receivable.

*Id.* at 1192.

Accordingly, since the assignee had perfected its security interest in the accounts receivable under Article 9, it was entitled to priority over the lease agreement of the lessor since the assignment contained in the lease had not been properly perfected under the U.C.C. 527 F.2d 500, at 501.

Similarly in *In re Greater Atlantic and Pacific Investment Group, Inc.,* 88 B.R. 356 (Bankr.N.D.Oklahoma 1988) the court, also applying Missouri law, held that a perfected security interest in rents did not cover hotel room revenues. Observing that hotel patrons are guests rather than tenants, *id.* at 359, the court ruled that a hotel guest's payment to the innkeeper for lodging is in the nature of a payment under a contract or on account, i.e., "an account receivable." *Id.* 359. Since the security agreement did not include accounts receivable, the court held that the secured creditor had no interest in the cash collateral generated by the hotel.

In contrast to these cases is *In re Buena Park Development Corp.,* CV No. 79–1394 DWW, slip op. (C.D.Cal. Sept. 17, 1979) clarified slip op. (C.D.Cal. Oct. 10, 1979), upon which KCCI relies. In holding that hotel room revenues are rents within § 9–104(j) the court stated that there is no distinction between a hotel guest as a "licensee" and a "tenant," CV No. 79–1394 at 241, and citing Webster's Collegiate Dictionary, defined rent as "commonly thought of as constituting payment for the temporary use of property." *Id.* (quoting from Webster's Colleg. Dictionary p. 1233).[2]

This analysis is unsatisfactory. It does not account for the difference between a guest and tenant. Nor does it apply the language of § 9–104(j) which speaks of rents arising from leases. While the Nebraska courts have not interpreted § 9–104(j), they have sharply distinguished guests from tenants. In *Leon v. Kitchen Bros. Hotel Co.,* 134 Neb. 137, 277 N.W. 823 (1938) the Nebraska Supreme Court held that a guest in a hotel was not a "tenant" even though his stay was for several months at a time. The factors which the court looked to in determining the status of a "guest" included the signing of a hotel register, billing on a daily basis and being provided with the same services as other guests. *Id.* at 827. In *Pullman Palace Car Co. v. Lowe,* 28 Neb. 239, 44 N.W. 226 (1889), the Nebraska Supreme Court likened the relationship of a sleeper car company to its passenger to that of an innkeeper-guest relationship:

> It does invite for hire all passengers holding first-class tickets to occupy its cars. In effect, it says to all such passengers: "We will furnish you safe, pleasant, commodious cars, with all possible facilities to prevent weariness and fatigue with comfortable sleeping ..." *Id.* at 227.

Accordingly, the court ruled that a passenger, on entering a sleeping-car is a "guest." *Id.* at 228. *See also Clancy v. Barker,* 71 Neb. 83, 98 N.W. 440 (1904) (comparing the duties of a hotel keeper to his guests as similar to the obligation of a common carrier to its passengers).

It is thus apparent that the Nebraska courts will follow *P.S. Hotel* and agree that a security interest in hotel room revenues is to be perfected under Article 9 of the U.C.C. The language of the exemption set forth in § 9–104(j), the general rule that a hotel guest is a licensee, the policy of Article 9 and that the Eighth Circuit, in which Nebraska lies, has so ruled strongly indicate that the Nebraska courts would so rule.

---

**2.** KCCI also relies on *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Bankr.D.Colo.1986) and *In re Flower City Nursing Home,* 38 B.R. 642 (Bankr.W.D.N.Y.1984) where it was held that the filing of a § 546(b) notice under the Bankruptcy Code served as affirmative action as required by applicable state law in order for a mortgagee to protect an inchoate security interest in rents and profits derived from the operation, respectively, of a hotel and nursing home. Neither court, however, addressed the question of whether hotel room revenues comprise rents under § 9–104(i) and whether a security interest in such collateral must be perfected under Article 9 of the U.C.C.

### III.

Having concluded that the Nebraska courts would require perfection of a security interest in hotel room revenues pursuant to Article 9, it follows that the lien asserted by defendant here on such revenues must be avoided.

Perfection of such security interests is governed by Neb.U.C.C. § 9–401(1)(c). That section requires filing of a financial statement in the office of the Nebraska Secretary of State in order to perfect. An unperfected security interest is subordinate to, *inter alia*, lien creditors without knowledge, including trustees in bankruptcy, § 9–301(1)(b), § 9–301(3), and transferees for value without knowledge, § 9–301(1)(d). Section 544(a) of the Bankruptcy Code vests trustees and debtors-in-possession, see 11 U.S.C. § 1108, with the rights under applicable state law of each of those entities.[3] KCC's lien is thus avoided under § 544(a) and preserved for the benefit of the estate pursuant to § 551 of the Code.

### IV.

### (A.)

With respect to that portion of the cash collateral attributable to the gas station and vending machine leases, which clearly do fall within the exemption of Neb. U.C.C. § 9–104(j), KCCI asserts that the Debtors' avoiding powers do not preclude perfection of a lien in rents pursuant to § 546(b). It further argues that the Stipulation of November 9, 1987 and its having filed a motion for relief from the automatic stay and to sequester rents perfected its lien on rents. It makes the same arguments with respect to hotel room revenues on the assumption that Article 9 does not apply to a security interest in those revenues.

These contentions are without merit. Even were a different conclusion reached as to the status of hotel room revenues and they were treated as rents from an interest in real property and therefore like the rents from the Kearney's gas station and vending machine space leases, § 546(b) of the Bankruptcy Code and the weight of authority preclude KCCI's assertion of a lien with respect to all rents in this case.

Section 546(b) provides:

The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b). Thus, the exception to the avoiding powers is limited to those instances where applicable state law permits the act of perfection to take priority over intervening creditors. *E.g., Casbeer v. State Federal Savings & Loan Ass'n of Lubbock (In re Casbeer)*, 793 F.2d 1436, 1443 (5th Cir.1986); *In re Association Center Ltd. Partnership*, 87 B.R. 142, 146 (Bankr.W.D.Wash.1988); *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 301 (Bankr.D.Mass.1988).

With respect to state law, the parties agree, in accord with *Butner v. United*

---

**3.** In bankruptcy, pursuant to § 544, a debtor-in-possession, since it has the status of a trustee, *see* 11 U.S.C. § 1108:

Shall have, as of the commencement of the [bankruptcy] case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor ...

that is voidable by a judicial lien creditor who gave value, 11 U.S.C. § 544(a)(1), an unsatisfied execution creditor who gave value, *id.* (a)(2), or a bona fide purchaser of real property, *id.* (a)(3). The Debtors claim the status of a judicial lien and unsatisfied execution creditor. Since the status is without knowledge of the security agreement, it is not asserted that § 11.8 of the Deed of Trust, which declares all collateral to be part of the Premises, is binding on the Debtors.

*States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979), that Nebraska law applies. Under Nebraska law a lien on rents is inchoate until default by the obligor when it becomes an equitable lien. *Saline State Bank v. Mahloch,* 834 F.2d 690, 692 (8th Cir.1987). But the lien, even in its equitable form, is of no force and effect until the filing of a petition seeking the appointment of a receiver pursuant to Section 25–1081 of the Revised Statutes of Nebraska, (Reissue 1985). As pertinent here, that section provides for court appointment of a receiver in a judicial proceeding for foreclosure of a mortgage on default and when the mortgaged property is probably insufficient to discharge the mortgaged debt. Neb.Rev.Stat. § 25–1081(2). If a receiver is appointed, the mortgagee, however, is not entitled to back rents predating its petition for appointment of a receiver. *Goddard v. Clarke,* 81 Neb. 373, 116 N.W. 41, 42 (1908). It is entitled only to prospective rents and its claim to those rents is superior to that of a junior mortgagee who had previously obtained the appointment of a receiver. *Goddard,* 116 N.W. at 42.

Whether a perfected lien for rents is superior to a prior judicial lien creditor in Nebraska is not clear. Some forty years ago, the Nebraska Supreme Court held that such a perfected lien has prospective priority over a judicial lien creditor. *Federal Farm Mfg. Corp. v. Ganser,* 146 Neb. 635, 20 N.W.2d 689 (1945). In 1986, however, the federal district court in Nebraska held that an unperfected security interest in rents in Nebraska could not be perfected after the filing of a bankruptcy petition in light of the judicial lien creditor status of a debtor-in-possession conferred by § 544(a)(1) of the Bankruptcy Code. *In the Matter of Mahloch,* No. 86–0–219 slip op. at 8 (D.Neb. Oct. 17, 1986). The Eighth Circuit reversed stating that § 544(a) had not been properly invoked and that therefore a post-petition to sequester rents and profits should have been recognized. The Court remanded the matter for proceedings if § 544(a) was invoked, *Saline,* 834 F.2d at 695, thereby implying that under Nebraska law a judicial lien creditor takes priority over a perfected security interest in rents.

Were that implication firmly settled, the analysis under § 546(b) would end. By its terms, § 546(b) permits perfection only if a priority over a prior lien creditor would be achieved.

### (B.)

Given that Nebraska law is not clear on this point and if it is assumed that, notwithstanding *Saline,* perfection of a security interest in rents through the appointment of a receiver would afford prospective priority, the issue here is whether the operation of § 546(b) is dependent on the priority relating back under state law to a time prior to the filing of the bankruptcy petition. That issue has divided the courts. On motions regarding use of cash collateral, *see* 11 U.S.C. § 363(c)(2), or for relief from the automatic stay, *see* 11 U.S.C. § 362(d), some courts have concluded that § 546(b) requires only that applicable law afford priority over such creditors and not that perfection relate back to a time pre-petition. *Consolidated Capital Inc. Trust v. Colter, Inc.,* 47 B.R. 1008, 1011 (D.Colo. 1985), *aff'g* 46 B.R. 510 (Bankr.D.Colo. 1984); *In re Gelwicks,* 81 B.R. 445, 448 (Bankr.N.D.Ill.1987); *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Bankr.D.Colo. 1986); 14 B.C.D. 1211, *In re Sampson,* 57 B.R. 304, 307 (Bankr.E.D.Tenn.1986); *In re Fluge,* 57 B.R. 451, 457 (Bankr.D.N.D. 1985).

The Nebraska courts are in flux. In *In re Anderson,* 50 B.R. 728 (D.Neb.1985), the district court, without any discussion of the interplay of §§ 544(a) and 546(b), held that the bankruptcy court should have exercised its equitable powers to permit a mortgagee to prove a deficiency and thereby perfect a claim to rents. In *Saline,* as noted above, the Eighth Circuit held that § 546(b) notice could have effect in the absence of a challenge by a trustee or debtor-in-possession under § 544. Two bankruptcy court judges, in *Matter of Selden,* 62 B.R. 954 (Bankr.D.Neb.1986) and in *In re Erickson,* 83 B.R. 701 (Bankr.D.Neb.1988), have ruled that they were bound to follow *Anderson,* in the absence of a § 544 challenge, al-

though they disagreed with its interpretation of the Bankruptcy Code.

Other cases, however, hold that the § 546(b) exemption is applicable only if perfection relates back to a time prior to the filing of the bankruptcy petition. *Casbeer,* 793 F.2d at 1443; *Association Center,* 87 B.R. at 146; *Prichard Plaza,* 84 B.R. at 301; *Creben v. Rabin (Matter of In re A.W.H. of Wisc. Inc.),* 70 B.R. 546 (Bankr. E.D.Wisc.1987); *In re Winzenburg,* 61 B.R. 141 (Bankr.N.D.Iowa 1986); *In re Excellency Homes,* 72 B.R. 5, 6 (Bankr.E.D. Wisc.1985); *Exchange Nat'l Bank of Chicago v. Gotta (In re Gotta),* 47 B.R. 198, 202 (Bankr.W.D.Wisc.1985); *In re Electric City, Inc.,* 43 B.R. 336, 11 C.B.C. 895 (Bankr.W.D.Wa.1984).

We find the latter cases far more compelling. The language of § 546(b) might facially appear to permit perfection if priority over a lien creditor is thereby achieved. But the legislative history makes clear that Congress had in mind only those state law statutes permitting relation back to a period prior to the filing of the bankruptcy petition. Both the House and Senate reports state unequivocally that relation back is required:

> The trustee's rights and powers under certain of the avoiding powers are limited by section 546. First, if an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee. If applicable law requires seizure for perfection, then perfection is by notice to the trustee instead. *The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case.*
>
> The phrase "generally applicable law" relates to those provision of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases. For example, many State laws, under the Uniform Commercial Code, permit perfection of a purchase-money security interest to relate back to defeat an earlier perfected non-purchase-money security interest if the former was perfected within ten days. UCC § 9–301(2). Such perfection would then be able to defeat a hypothetical judicial lien creditor on the date of the filing of the petition. *The purpose of the subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection.* It is not designed too [sic] give the States an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978), U.S.Code Cong. & Admin. News 1978, p. 5787 (emphasis added). This is thus one of those instances where the language of the statute is but only the "starting point," *Ernst & Ernst v. Hochfelder,* 425 U.S. at 197, 96 S.Ct. at 1382–83 and the legislative history clearly reveals that the Congressional intention was not as broad as the meaning that could be implied from its literal interpretation. *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981).

Notwithstanding this legislative history, KCCI essentially asserts that to require that state law concerning perfection of a security interest relate back to a time prior to the filing of a bankruptcy petition is inconsistent with *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

In *Butner,* a mortgagee having no express security interest in rents asserted that bankruptcy court appointment of an agent to collect rents gave it a right to rents under state law. The Court of Appeals held that the mortgagee had not taken the steps necessary under state law to gain the right. The Supreme Court affirmed, holding that under the former Bankruptcy Act state law applied. The Court expressly rejected a rule adopted by

two circuits that afforded a mortgagee a security interest in rents regardless of whether state law would recognize such an interest until after foreclosure. 440 U.S. at 54, 57, 99 S.Ct. at 917.

Presumably because the former Bankruptcy Act did not directly address the questions, the Court added:

> The federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.
>
> \*     \*     \*     \*     \*     \*
>
> The essential point is that in a properly administered scheme in which the basic federal rule is that state law governs, the primary reason why any holder of a mortgage may fail to collect rent immediately after default must stem from state law.

440 U.S. at 57, 58, 99 S.Ct. at 919.

That the holding *Butner* applies under the Code, *Casbeer*, 793 F.2d at 1440; *Wolters Village Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.)*, 723 F.2d 441, 445–46 (5th Cir.1984) (Texas law that relates back pre-petition held governing) is evident from § 546(b). But it does not follow that the *Butner* dictum regarding the steps a bankruptcy court should take, quoted above, affords the bankruptcy court with *carte blanche* as the district court in *Anderson* apparently believed, *see* 50 B.R. at 731, 733, and KCCI argues here, since Congress has already acted in the area. In this respect, the job of the bankruptcy court is to determine the rule that Congress intended and to apply that rule. As stated in *Norwest Bank Worthington v. Ahlers*, — U.S. —, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988), "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."[4]

Moreover, the final portion of that *dictum* indicates that the Supreme Court may well have intended that the bankruptcy courts only "take whatever steps are necessary" to permit perfection that relates back under state law. Such a situation might arise where, after default, a mortgagee petitioned a state court for appointment of a receiver and then a bankruptcy petition was filed. If applicable state law would relate back by affording the mortgagee with rents from the date of the receivership petition, the filing of a § 546(b) notice would relate back. Such a result would obtain, for example, under Texas law. In Texas, a mortgagee's rights to rents relate back to the assignment, *Casbeer*, 793 F.2d at 1443, and thus would be preserved by a § 546(b) notice. Such a construction of *Butner* flows from the Court's statement that the reason for filing to permit a mortgagee to collect rents "must stem from state law." If the right to rents relates back under state law, it is preserved. If it does not, the reason lies in state law. That is all that *Butner* decided. *Gotta*, 47 B.R. at 201.

Interpreting § 546(b) to permit perfection only if perfection relates back under applicable state law, as unequivocally stated in the legislative history, is consequently not inconsistent with *Butner*.

We thus conclude that the legislative history governs the interpretation of § 546(b). To be sure, the language of the statute could be read to permit perfection under applicable law regardless of whether perfection relates back. With each house of Congress having twice stated, however, that only perfection under applicable state law permitting relation back falls within the intended scope of § 546(b), the courts are not free to construct a rule contrary to that expression of intent.

Only if that legislative history is ignored could KCCI's claim of perfection under § 546(b) be sustained and the Court then called upon to resolve whether perfection of a security interest in rents affords a priority over a judicial lien creditor. Since it is settled law in Nebraska that the filing of a petition for receiver is necessary to perfect a security interest in rents derived

---

4. Unlike in Part I of this Decision where our task is to ascertain the rule likely to be applied

by the Supreme Court of Nebraska, here federal law provides the rule of decision.

from realty and that such perfection is only prospective, § 546(b) does not apply. *Compare Casbeer*, 793 F.2d at 1443 (under Texas law action to perfect security interest in rents relates back) *with Prichard Plaza*, 84 B.R. at 301 (no relation back under Massachusetts law.)

Here, all KCCI did was attempt to foreclose by noticing the property for sale. It did not commence a law suit. Nebraska law, however, provides that "[n]o receiver shall be appointed except in a suit actually commenced and pending...." Neb.Rev. Stat. § 25–1082. Notwithstanding the debtor's default and the requirement of Nebraska law of appointment of a a receiver, KCCI failed to take these steps. It makes no claim that its attempt to foreclose satisfied Nebraska law requirements to perfect a security interest in rents. Just as it failed to protect itself by filing a duplicative financing statement with the Nebraska Secretary of State so did it fail to assert its rights to rents under Nebraska law until after the filing of the debtor's bankruptcy petition. There being no relation back in the absence of a pre-bankruptcy petition for appointment of a receiver under Nebraska law, KCCI may not avail itself of § 546(b).

### (C.)

Nor may KCCI avail itself of the Equitable Order of May 11, 1987, the Stipulation of November 9, 1987 or its having filed a motion under 11 U.S.C. § 362(d) for relief from the automatic stay and for sequestration of cash collateral. The Equitable Order plainly reserves the question of whether the senior mortgagee, Equitable, has any right to the income of the hotel. *See* Order of 5/11/87 p. 4. That Order thus cannot be deemed a sequestration order. Nor can the November 9 Stipulation be so construed. In this regard, it merely provides for continuation of the practices under the May 11 Order, see Stipulation of Nov. 9, 1988 ¶ 7, and recites that the perfection of the alleged security interest by KCCI and Equitable in the cash collateral "remains undetermined." *Id.* ¶ 19.

Rather, these are forms of orders often entered in bankruptcy cases where the parties retain the status quo so that their rights can be fairly determined or settled. *Greater Atlantic*, 88 B.R. at 359. KCCI argues persuasively that such orders should be favored because they enable parties to avoid premature litigation in the beginning phases of a bankruptcy case. But such orders will not be agreed to if they are viewed to act to the prejudice of any party.

Furthermore, even were these orders or KCCI's motion to be viewed as the equivalent of a petition for the appointment of a receiver as KCCI argues, they suffer from the same failure to relate back under Nebraska law as KCCI's § 546(b) notice. In *Casbeer* where similar motions were filed, the Fifth Circuit equated the motions to a § 546(b) notice and stated:

> For State Savings to escape having its rental assignments voided under § 544(a), Texas law must permit a creditor such as State Savings to enforce a security interest in rents against an entity that acquired rights to the rents before the creditor perfected. That is, Texas law must authorize the creditor's perfection to relate back to a time before Casbeer filed his bankruptcy petition and, as a debtor-in-possession, assumed the status of a lien creditor or bona fide purchaser.

793 F.2d at 1443 (citations omitted). Since Nebraska law contains no such authorization, the motions were of no force and effect since § 544(a) has been asserted here.

In addition, such motions should be given no effect greater than that of a § 546(b) notice. To hold otherwise would, by the implication of such an effect, distort the limitations Congress has built into § 546(b) where it expressly considered the subject. Such a statutory construction is disfavored and such a right should not be implied. *E.g., Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1978).

We, therefore, hold that (i) KCCI's security interest in rents attributable to the gas

station and vending machine space leases is avoided under § 544(a) since they were not perfected under applicable state law pre-petition and perfection post-petition is not permitted under § 546(b) given that perfection under Nebraska law does not relate back to a time pre-petition and (ii) that its security interest in room revenues, even if falling within the exclusion of Nebraska U.C.C. § 9–104(j), is avoided for the same reasons.

## V.

These observations regarding § 546(b) and Nebraska law concerning an assignment of rents, moreover, afford an additional and highly cogent reason for holding that the Nebraska courts would apply Article 9 of the U.C.C. to hotel room revenues. Compliance with Article 9 sharply limits uncertainty concerning the effectiveness of hotel financing collateralized by a security interest in such revenues. The perfection of such a security interest under Article 9 upon the entry into a security agreement or shortly thereafter not only makes the lien effective as opposed to the inchoate nature of an assignment of rents, but also avoids the relation back issue under § 546(b) should the debtor subsequently be the subject of a bankruptcy petition.

For the foregoing reasons, plaintiffs' motion for summary judgment is granted and defendant's motion for summary judgment is denied.

Settle order and judgment.